870 So.2d 984 (2004)
STATE of Louisiana
v.
ADVANCED RECYCLING, INC., James G. Trumps and Robert Parker.
No. 2002 K 1889.
Supreme Court of Louisiana.
April 14, 2004.
*985 Charles C. Foti, Jr., Attorney General, Michael Harson, District Attorney, David M. Smith, Neal Johnson, for applicant.
Jason W. Robideaux, William L. Goode, Lafayette for respondent.
PER CURIAM.
The state has charged Advanced Recycling, Inc., and its corporate officers named in their individual capacity, with one count of theft over the amount of $500 and one count of filing or maintaining false public records in violation of La.R.S. 14:67 and 14:133, respectively. The charges stem from an investigation conducted by the Louisiana State Police and the Louisiana Department of Environmental Quality [Department or DEQ] in 1997 into the operations of Advanced Recycling, Inc. [ARI], a licensed waste tire processor owned and operated by respondents Trumps and Parker. In an agreement with the Department, ARI received compensation for the processing and marketing of waste tires to recycling facilities approved by the Department. The state alleges that in the course of operating ARI, respondents submitted several falsified manifests to DEQ in 1997 requesting payment for specified amounts of on-road tires shredded and shipped to an approved recycler according to the Department's regulations. In fact, the state alleges, respondents inflated their claims for compensation by including in the specified amounts of processed tires waste off-the-road tires (OTRs) shipped unprocessed and whole to an unapproved site in Mississippi. According to the state, respondents thereby knowingly filed in a public office, and maintained at their facility under a duty imposed "by law, regulation, or rule," records "containing a false statement or false representation of a material fact." La.R.S. 14:133(A)(3).
Throughout these extended proceedings, respondents have claimed that the state may not charge them with an offense under La.R.S. 14:133 because they had no duty to maintain or file with the Department records pertaining to the collection and disposal of OTRs, which the legislature did not expressly authorize the Department to regulate until 1999. After their first attempt to quash the count charging the violation of La.R.S. 14:133 failed, see State v. Parker, 99-01619 (La. App. 3rd Cir.2/17/00), writ denied, 00-0770 (La.6/23/00), 765 So.2d 1039, respondents filed a motion in limine seeking clarification by the trial court of the Department's authority to regulate the disposal of OTRs in 1997. The trial court concluded that respondents had no duty imposed on them by statute or Department regulation to file manifests or monthly reports regarding their handling and disposal of off-road tires. The court further ruled that it would prevent the state from offering at trial any evidence contrary to its findings on the motion in limine. The state unsuccessfully sought review of that decision. State v. Parker, 00-00985 (La.App. 3rd Cir.9/4/00), writ denied, 00-3051 (La.1/26/01), 781 So.2d 1263.
Thereafter, the respondents filed a second motion to quash on grounds that in light of the trial court's rulings on the motion in limine, the state could not sustain *986 its prosecution of them for filing or maintaining false public records. The trial court granted the motion and the court of appeal affirmed, in part because the state conceded that the Department was, in fact, not authorized to pay for the disposal of OTRs in 1997. State v. Advanced Recycling, Inc., 02-0183 (La.App. 3rd Cir.6/5/02), 819 So.2d 420. Despite this concession by the state, we granted its present application to reverse the decision below for the reasons that follow.
This prosecution of respondents takes place against the background of the legislature's attempts to improve the environmental quality of Louisiana by reducing landfills of solid wastes strewn around the state. In 1989, the legislature enacted Louisiana's Solid Waste Recycling and Reduction Law, La.R.S. 30:2411-2422 [SWRRL], to remove "certain materials from the solid waste stream going into landfills currently being utilized for the disposal of solid waste in Louisiana," and to conserve "energy by efficient reuse of these products, thereby benefitting all citizens of the state." 1989 La. Acts 185, § 2411(A)(1). In pertinent part, the materials targeted for disposal by SWRRL include waste tires, defined as "a whole tire that is no longer suitable for its original purpose because of wear, damage, or defect." La.R.S. 30:2412(23). In its original version, the act defined tire generally as "a continuous solid or pneumatic rubber covering encircling the wheel of a motor vehicle," La.R.S. 30:2412(19), and specifically limited the definition of motor vehicle to "an automobile, motorcycle, truck, trailer, semitrailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state...." La.R.S. 30:2412(5). The state and defense agree that in its original version, SWRRL did not govern so-called off-road tires (OTRs) and would not until 1999, or after the acts charged against respondents in the present case.[1]
In 1992, the legislature added subsections "G" and "H" to La.R.S. 30:2418. Subsection "G" established within the state treasury a Waste Tire Management Fund, drawing on the fees imposed on the sale of new tires among other sources of revenue, maintained for the "sole[ ] ... purpose of solving the state's waste tire problem." Subsection "H" authorized the Department to enact regulations governing the standards, requirements and permitting procedures for waste tire transporters, collections sites, and processors, and specifically authorized the Department to provide "incentives and assistance for collection and transportation of waste tires including, but not limited to, incentives and assistance for local governing authorities which shall be given the highest priority." La.R.S. 30:2418(H)(5). The subsection further directed the Department to provide incentives and assistance to waste tire processing facilities, "but only if such facilities use, consume, or process the tires so that they may be reused as a raw material, product, or fuel source." La.R.S. 30:2418(H)(7).
Acting under the authority of the 1992 legislation, the Department adopted regulations which in pertinent part provide for the payment of $0.85 per 20 pounds of tire for the processing of waste tire, i.e., the shredding or cutting of the tire into four-by-four inch sections or smaller pieces. LAC 33:VII.10535(D)(4)(a). The regulations also provide for an additional $0.15 *987 per 20 pounds of processed waste tire for the delivery of the scraps as raw material to a qualified recycler. LAC 33:VII.10535(D)(4)(c). A processor may therefore make a total of $1.00 per 20 pounds of waste tires processed and marketed in compliance with the Department's regulations. As for whole waste tires, the Department's regulations specifically provide that "[b]oth the processing and the marketing payments shall be made for whole waste tires or baled waste tires that are marketed and shipped to a qualified recycler by the processor." LAC 33:VII.10535(D)(6). A processor may therefore make $1.00 per tire by baling whole waste tires and delivering them to a qualified recycler.
The Department's regulations further provide that payments will be made "to the processor on a monthly basis, after properly completed monthly reports are submitted by the processor to the department... [on] forms ... provided by the administrative authority." LAC 33:VII.10535(D)(7). Finally, the Department's regulations call for each qualified processor to submit monthly manifests, again on forms provided by the agency, indicating each shipment of more than 20 waste tires received at the processing facility. LAC 33:VII.10525(A). The manifest forms also record the shipment of waste tires, either processed into shreds or baled whole, from the waste tire processing facility to an approved recycler. LAC 33:VII.10515(C). These manifests then become part of the monthly waste tire facility reports to the Department certifying the pounds of waste tires processed during the month and the pounds of waste tire material marketed and delivered as raw material to a qualified recycler. LAC 33:VII.10525(B). The forms provided by the Department for the waste tire facility reports thus contain separate sections for a processor to list the total number of pounds processed (i.e., shredded) waste tires delivered to a qualified recycler, compensated at a total of $1.00 per 20 pounds, and whole waste tires delivered to a qualified recycler, compensated at a total of $1.00 per tire. The Department's regulations further provide that each processor must certify that the information provided on the manifests and monthly reports is accurate, on penalty of fine or imprisonment, and require the processors to maintain the records for a minimum of three years. LAC 33:VII.10533(B) and (F).
However, all parties to these proceedings agree that at some point in the mid-1990's the Department began underwriting the recycling of off-road tires collected from qualified parish collection centers, without expressly adopting regulations to that effect and without apparent legislative sanction in La.R.S. 30:2418 before its 1999 amendment. The Department paid as much as $5.00 per OTRs which, as the state pointed out at the hearing on respondents' original motion to quash, might weigh as much as 1,000 pounds. The state also conceded at the hearing on respondent's original motion to quash that under its informal policy for OTRs, the Department compensated waste tire facilities for the processing and marketing of off-road tires in the same manner as on-road program tires, i.e., $1.00 for every 20 pounds shredded and sent to an approved market. The apparent ultra vires nature of the Department's off-road tire policy ultimately led both the trial court and the court of appeal to agree with respondents' argument that they had no duty to file or maintain accurate records regarding collection and disposal of OTRs according to regulations governing only the collection and disposal of on-road, program tires. Specifically, the Third Circuit rejected the state's argument that "DEQ's general authority over solid waste authorized it to *988 develop the procedure for OTRs," in light of the state's concession that "OTRs were not included in the [SWRRL] or the DEQ regulations and that DEQ was not authorized to pay for OTRs through the waste tire fund." Advanced Recycling, Inc., 02-0183 at 5, 819 So.2d at 424.
We need not reconsider here whether SWRRL gave the Department the authority before 1999 to regulate the disposal of off-road waste tires by requiring compliance with its rules and regulations for reporting the collection and disposal of on-road tires. Even assuming, arguendo, that the Department lacked such authority, the court of appeal failed to address a second aspect of the state's argument outlined in its original answers to respondent's motion for discovery and for bill of particulars filed into the record in early 1999. The state's answers informed the defense that prosecution of both the theft and false public records counts against respondents focused on ARI's waste facility reports submitted to the Department in July and October of 1997, and specifically on waste tire manifests attached to the reports purporting to show the shipment of waste tires from ARI to Earth Management, an approved recycler, on July 25, October 21, and October 23, 1997. Attached to these manifests were ARI invoices describing the shipments on those dates as "tire shreds." The monthly waste tire facility reports for July and October requested compensation from the Department for the processing of specified amounts of waste tires shipped to an approved market, at $1.00 for every 20 pounds, but left entirely blank the section on the forms for reporting disposal of whole waste tires to approved recyclers, which the Department compensated at the lower rate of $1.00 per tire. The state informed respondents in its answers to their bill of particulars that it would show at trial that the waste tires listed on the manifests for July 25, October 21, and October 23 as tire shreds shipped to Earth Management were, in fact, whole, unprocessed waste tires "hauled away to an unapproved market in Mississippi." In its memorandum in opposition to the motion to quash, the state elaborated on its discovery answers as follows:
The defendants maintain that the tires at issue were `off the road' tires (OTR's) and that the[ir] status as OTR's is of prime importance. In fact, the State has never alleged that the tires were OTR's. The fact that the tires were OTR's while perhaps factually correct is completely irrelevant to the issue in this case. What is relevant to both [counts] is that the defendants on the three occasions charged in the indictment, as supplemented by the three (3) bill of particulars, submitted documentation to the State of Louisiana, Department of Environmental Quality Waste Tire Management Fund (DEQ) asserting that they `processed' tires, and `marketed' them to a Lafayette company called Earth Management when in fact the tires represented on the documentation submitted to DEQ were not `processed' tires, but were instead, whole, unprocessed tires which had been sent to an out-of-state facility that had not been approved by the DEQ as an acceptable after-market.... [W]hile manifests were arguably not required to move the OTR's, the manifests were required to be submitted to the DEQ with the `Waste Tire Facility Report and Application for Payment' which the defendants were required to file in order to collect payment for processed, marketed tires from the DEQ Waste Tire Management Fund.... The defendants by submitting multiple `Waste Tire Facility Report and Application for Payment' [forms] containing misrepresentations, fraudulently obtained *989 monies from the DEQ which they were not entitled to obtain.
The state accompanied its answers to respondents' motion for particulars with a notice of intent to introduce evidence of other criminal acts pursuant to La.C.E. art. 404(B). The notice alleged other instances at the end of 1996 and throughout 1997 in which ARI submitted monthly reports misrepresenting whole waste tires shipped to an unapproved market as processed tire material shipped to an approved recycler. The state eventually incorporated these other alleged acts in an amending and supplemental answer filed in 2002 as other instances of theft by misrepresentation charged in a single count under La.R.S. 14:67 which also encompasses the transactions on July 25, October 21, and October 23, 1997.
As clarified by its answers to respondents' request for particulars, the gist of the state's case against respondents is that by misrepresenting whole waste tires distributed to an unapproved market as processed or shredded tires sent to an approved recycler, respondents exploited for unjustified economic gain the incentive program established by the Department at the direction of the legislature to promote not simply the disposal of waste tires but the processing and recycling of those tires for beneficial end use as product or fuel. We agree with the state that deception of this nature constitutes a false representation of a material fact in a public record for purposes of La.R.S. 14:133(A)(3) because a processor of waste tires in Louisiana has a duty imposed by law and Department regulation to submit and retain accurate records of its processing and marketing of waste tires to approved recyclers as the basis for receiving state funds in accord with the Department's incentive plan. See La.R.S. 44:1(2)(a); Lewis v. Spurney, 456 So.2d 206, 207 (La.App. 4th Cir.1984)(corporate records which "necessarily reflect business or transactions" concerning state funds are public records), writ denied, 457 So.2d 1183, 458 So.2d 488 (La.1984).
As a general rule, a motion to quash "is essentially a mechanism by which to raise pre-trial pleas of defense, i.e., those matters which do not go to the merits of the charge." State v. Perez, 464 So.2d 737, 739 (La.1985). The matter of "factual guilt or innocence of the offense charged is [therefore] not raised by the motion to quash." Id., 464 So.2d at 740 (citations omitted). An exception exists for cases in which the state cannot establish an essential element of the offense under any set of facts conceivably provable at trial. See State v. Legendre, 362 So.2d 570, 571 (La.1978)(quashing of bill of information for aggravated battery proper when state alleged that the dangerous weapon used was a concrete parking lot). In the present case, the trial court erred in granting the motion to quash as if the exception to the general rule applied. However, entirely apart from the controversy involving the Department's authority to bring OTRs within its regulatory authority in 1997, the state has alleged at least one set of facts involving the Department's undisputed authority in 1997 to promote the processing and marketing of on-road waste tires for recycling which may support a conviction for violation of La.R.S. 14:133(A)(3) if found credible by the trier of fact. Accordingly, the rulings of the courts below are reversed and this case is remanded to the district court for further proceedings consistent with the views expressed herein.
JUDGMENT OF COURT OF APPEAL REVERSED; CASE REMANDED.
NOTES
[1] 1999 La. Acts 1015 amended La.R.S. 30:2412 to add off-road vehicles to the Act's coverage, defining the term as "construction, farming, industrial, mining, and other vehicles not normally operated on the roads of this state." La.R.S. 30:2412(5.1). The term tire now means "a continuous solid or pneumatic rubber covering encircling the wheel of a motor vehicle or off-road vehicle." La.R.S. 30:2412(19).