MADELEINE M. LANDRIEU, Judge.
hThe defendant, Roger Ancalade, was convicted of one count of discharging a firearm during a violent crime, a violation of Louisiana Revised Statute 14:94. Mr. Ancalade was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence. For the reasons that follow, we affirm Mr. Anca-lade’s conviction and sentence.
FACTS
On May 4, 2013, the Schmiderder family held a party to celebrate the Kentucky Derby. Mr. Ancalade attended the party with his girlfriend, Crystal Schmiderder. Around 8:00 p.m., Mr. Ancalade and Crystal left the party. As they drove past the partygoers in the street, an altercation occurred between Mr. Ancalade and Mr. Alvin Schmiderder, Crystal’s father and the party’s host. Mr. Ancalade then drove away. Minutes later, partygoers heard gunshots. Eyewitnesses testified at trial that they saw Mr. Ancalade standing in the middle of the street, firing a gun in their direction. Multiple eyewitnesses called 911; however, New Orleans Police Department officers did not arrive at the scene that |2night. Two days later, witnesses went to the police station and gave statements about the incident to police officers.
ERRORS PATENT
A review of the record for errors patent reveals none.
ASSIGNMENTS OF ERROR
Mr. Ancalade asserts the following assignments of error: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in denying the defendant’s motion to quash the bill of information; (3) the jury’s verdict was nonrespon-sive to the bill of information; and (4) the sentence imposed by the trial court was constitutionally excessive.
DISCUSSION
I. Sufficiency of the Evidence
In this assignment of error, Mr. Anca-lade contends that the State presented insufficient evidence to support his convic *894 tion of discharging a firearm during a violent crime. We disagree.
When reviewing for the sufficiency of the evidence, this court is controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and clarified by the Louisiana Supreme Court in State v. Mussall, 523 So.2d 1305, 1311 (La.1988). The standard enunciated in these two cases requires us to determine whether, “viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the ^essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
We are not to substitute our judgment for that of the jury as all rational credibility calls are solely within its province. However, we are called upon to ensure that the jury did not merely speculate as the defendant’s guilt if the evidence is such that reasonable jurors must have reasonable doubt.
In this case, Mr. Ancalade was convicted of one count of discharging a firearm during a violent crime pursuant to Louisiana Revised Statute 14:94(A). This statute provides that the “[ijllegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm ... where it is foreseeable that it may result in death or great bodily harm to a human being.” Subsection F adds enhanced penalties when the person committing the crime of illegal use of weapons does so “while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence.”
In his first assignment of error, Mr. Ancalade argues that the evidence is insufficient to convict him- of this crime as the State failed to present any physical evidence that he fired a weapon. This argument is misplaced as the law does not require the existence of physical evidence in order to convict. At trial, every eyewitness testified that on the evening of May 4, 2013, they observed Mr. Ancalade fire gunshots in their direction. The testimony of a witness, if reasonably |4credible and believed by the jury, is sufficient to sustain a conviction. A victim’s or witness’s testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. State v. Davis, 2002-1043, p. 3 (La.6/27/03), 848 So.2d 557, 558.
Mr. Schmiderder, the party host, testified at trial that as Crystal and Mr. Anca-lade were leaving the party in a car which Mr. Ancalade was driving. Mr. Schmi-derder waved to Mr. Ancalade, which prompted Mr. Ancalade to back up and ask Mr. Schmiderder what he had said. Mr. Schmiderder testified that as he approached the driver’s window, Mr. Anca-lade grabbed him by the tie, pulled him against the car, and began choking him. Mr. Schmiderder stated that during this altercation, he witnessed Mr. Ancalade hit Crystal. Mr. Ancalade then drove off and made a right turn onto a side street. Mr. Schmiderder stated that seconds after they drove off, he heard three or four gunshots. He saw Mr. Ancalade, on foot, at the corner, firing several shots at the Schmiderder family members and guests who were gathered outside of his residence.
Mr. John Behre, who lived in the same neighborhood as Mr. Schmiderder, testified that he had returned home after attending the Schmiderders’ party. He was sitting on his back steps listening to music when he saw Mr. Ancalade get out of his car and begin hitting Crystal. Mr. Behre testified that he told Mr. Ancalade to stop *895 hitting her. The two men exchanged words. Mr. Behre testified that Mr. Anca-lade grabbed a revolver-style gun from under the driver’s seat of the car and Isfired a shot at him. Mr. Behre began running away from Mr. Ancalade, who fired four or five more rounds. Mr. Behre stated that he called 911, but no police officers came to the scene. He went to the police station two days later to give his statement.
Ms. Jaclin Behre, Mr. Behre’s sister, corroborated her brother’s testimony concerning the incident. Ms. Behre testified that around 8:00 p.m., she was at the corner near her house when she saw Mr. Ancalade point a gun at her brother. Mr. Ancalade initially fired two shots at her brother and then fired three more shots as her brother ran away from the scene. Ms. Behre stated that she hid under her house because she was in fear for her life.
Ms. Lorelei Schmiderder Augustine, Crystal’s sister, testified that after she left the party, she received a phone call from her sister, Ms. Teresa Schmiderder, who was still at the party. Ms. Augustine testified that she did not have a conversation with Teresa at that time, but heard screaming and four gunshots before the line went dead. Ms. Augustine called 911 and returned to her father’s house. She stated that the police did not arrive that evening. Two days later, she went to the police station to report the incident.
Ms. Teresa Schmiderder, Crystal’s sister, testified that she was at the party when Crystal and Mr. Ancalade left. As they drove away, Mr. Ancalade got into an altercation with Mr. Schmiderder, in which Mr. Ancalade grabbed Mr. Schmiderder and began choking him. Teresa testified that as Crystal tried to restrain Mr. Anca-lade, he hit her. Mr. Ancalade and Mr. Schmiderder were | (¡eventually separated and Mr. Ancalade drove away from the house. A few minutes later, Teresa stated that she heard gunshots. She then saw Mr. Ancalade standing in the street shooting in the direction of her and her family. She testified that as he fired the weapon, he advanced a few steps in their direction. Two days after the incident, she went to the police station with other witnesses to report it.
During cross-examination, Teresa testified that Mr. Ancalade had gotten physical with her in the past. She filed a police report, but, fearing for Crystal’s safety, she dropped the charges.
Ms. Carmelite Sievers, Crystal’s cousin, corroborated Teresa’s testimony. Ms. Sievers added that her husband was able to free her uncle from Mr. Ancalade’s grasp. After the shooting incident, she called 911, but the police did not respond at the scene that night. Two days later, she gave a written statement to police officers identifying Mr. Ancalade as the person who fired shots at her and her family.
Ms. Jeannette Schmiderder, another of Crystal’s sisters, testified that Mr. Anca-lade was Crystal’s boyfriend of some years. Jeannette also attended the party on May 4, 2013. Jeannette testified that she witnessed the altercation between Mr. Schmiderder and Mr. Ancalade. After the altercation, she began gathering her belongings to leave when she heard several gunshots and saw Mr. Ancalade approaching on foot shooting at them. She called 911 and gave a statement to police, identifying Mr. Ancalade as the shooter,
Ms. Shelly Perschall was also called as a witness by the State. She stated that she was friends with the Schmiderders and attended their party on May 4, |72013. She recalled that she left the party around 8:00 p.m. and stopped for gas. While she was at the gas station, she received a call from Jeannette telling her about an altercation between Mr. Schmiderder and Mr. *896 Ancalade. Ms. Perschall returned to the Schmiderder residence about two minutes later. As she did, she saw Mr. Ancalade standing in the street firing a gun. Ms. Perschall fled the scene and called 911.
New Orleans Police Department Detective Gregory Powell of the Violent Crime Division testified that he met with five or six people on May 6, 2013, concerning this incident. Det. Powell learned from the police dispatch that several 911 calls were received on May 4, 2013; however, for unknown reasons, no police unit responded. Upon learning Mr. Anealade’s identity, Det. Powell obtained an arrest warrant for Mr. Ancalade for the crimes of aggravated assault and illegal discharge of a firearm. Det. Powell did not personally inspect the scene, but testified that a NOPD Officer Parker did inspect the scene, but did not recover any evidence. On re-direct, Det. Powell opined that if a revolver was used in the shooting, it would not be unusual not to find casings because a revolver does not eject casings.
Ms. Crystal Schmiderder testified on behalf of the defendant. She said that the defendant was her fiancée, that they had been together since she was twelve years old, and that they have three children together. She denied that Mr. Ancalade had ever beaten her. She testified that her family’s relationship with Mr. Ancalade |swas not good, that they never liked him, and that they constantly tried to convince her to leave him.
Crystal recalled that she and Mr. Anca-lade attended the party on May 3, 2013. Mr. Ancalade had not been drinking. She testified that the altercation between Mr. Ancalade and her father was due to her father’s drinking and resulting bad temper. As she and Mr. Ancalade were leaving the party, her father yelled something to them. She asked Mr. Ancalade to back up so she could find out what her father wanted. Mr. Ancalade asked her father was he had said. To which her father responded, “I didn’t f — ing say nothing to you. Ain’t nobody f — ing talking about you.” Crystal testified that her father reached into the vehicle and grabbed Mr. Anealade’s shirt. She told Mr. Ancalade to drive away and tried to roll the window up. During the altercation, Mr. Anealade’s shirt was torn and his necklace was broken.
Crystal testified that they drove around the corner and parked the car. Mr. Anca-lade attempted to comfort her. While they were sitting in the parked car, Crystal stated that she saw two men approaching. The men were removing their shirts and saying something about beating Mr. Ancalade. In response, Mr. Ancalade grabbed Crystal’s gun, exited the car, and fired two or three shots, telling the men that he did not want any trouble. Mr. Ancalade got back into the car, and they drove away. Crystal denied that Mr. An-calade walked to the corner and began firing at her family. On cross-examination, Crystal said that she recognized one of the men who approached them as John Behre.
|3The State re-called Teresa Schmiderder on rebuttal. Teresa recounted a specific occasion when Crystal called her because Mr. Ancalade was beating her and she needed help. Teresa went to Crystal’s home in an attempt to help her. Teresa testified that when she arrived at the house, Mr. Ancalade hit her. Teresa reported this incident to the police and told the officer that Crystal would deny that Mr. Ancalade was beating her. Teresa testified that Mr. Ancalade had given Crystal a black eye during one of their fights and had witnessed Mr. Ancalade hit Crystal on occasion.
It is clear from the record that every eyewitness, including Mr. Anealade’s girlfriend, saw him fire a weapon. Viewing *897 the entire record in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, that the State proved all the elements of charged offense. This assignment of error is without merit.
II. Motion to Quash
In this assignment of error, Mr. Anealade asserts that the trial court erred in denying his motion to quash the bill of information. In the bill of information filed against Mr. Anealade, he was charged with two identical counts of “[i]ntentionally or criminally negligently discharged a firearm where it was foreseeable that it might result in death or great bodily harm to a human being while committing a crime of violence.” First, Mr. Anealade contends that this bill of information is non-specific and without detail such that they fail to inform him of the nature of the charges against him.
|inAt the hearing on the motion to quash, defense counsel argued that the bill of information was insufficient under Louisiana Code of Criminal Procedure article 532 because it simply stated that “Mr. Anealade had illegally discharged a firearm while in the commission of a violent crime,” and did not state what the violent crime was. The trial court denied the motion to quash and reminded defense counsel that a written motion to quash must be filed.[1] After the trial court denied the motion to quash, defense counsel asked the State to disclose the basis of the violent crime. The State responded that it had informed defense counsel “off the record” the morning of the hearing that the State believed that weapon was discharged “during the course of multiple violent crimes under [Louisiana Revised Statute] 14:2 and those are attempted second degree murder, aggravated assault, and aggravated assault with a firearm.”
The decision by the trial court to grant or deny a motion to quash is solely a question of law. State v. Byrd, 96-2302, p. 18 (La.3/13/98), 708 So.2d 401, 411. Thus, an appellate court reviews the trial court’?s ruling in this ease under a de novo standard. See State v. Hamdan, 2012-1986, p. 7, (La.3/19/13), 112 So.3d 812, 816. Under this standard of review, the appellate court does not defer to any factual findings by the trial court. Id.
| nLouisiana Code of Criminal Procedure article 532(1) states that one of the grounds for a motion to quash is if “the indictment fails to charge an offense which is punishable under a valid statute.” The State may provide that information in the indictment alone, or in its responses to a defense request for a bill of particulars. State v. Gainey, 376 So.2d 1240, 1242-43 (La.1979). The purpose of the bill of particulars is to “set forth more specifically the nature and cause of the charge against the defendant.” La.C.Cr.P. art. 484. If the bill of information, together with any particulars, fails to inform the defendant adequately of the charges against him, the trial court may order the bill of information quashed. La.C.Cr.P. art. 485.
In his motion for particulars, Mr. Anea-lade asked “What was the specific offense which the State contends Roger Anealade *898 intended to commit at the time of the alleged incident?” In its response, the State alleged that “Roger Ancalade was engaged in attempted 2nd degree murder, aggravated assault, and aggravated assault with a firearm.” The State’s response to the bill of particulars supplied all the information Mr. Ancalade requested and to which he was entitled in order to defend himself against the charge. This portion of the assignment of error is without merit.
Mr. Ancalade’s second claim under this assignment of error is that because the State’s response to the bill of particulars alleges that one of the possible crimes of violence is attempted murder which “... would require the discharge of the weapon — simply showing the weapon would not suffice, as it might for aggravated assault,” the State has included a crime with identical elements and, therefore, | ^double jeopardy is implicated. This claim is unpersuasive. While the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same. offense, it does not prohibit the State from prosecuting a defendant for such multiple offenses in a single prosecution. State v. Hall, 2012-0601, p. 2 (La.6/29/12), 91 So.3d 302, 303 citing Ohio v. Johnson 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, ,81 L.Ed.2d 425 (1984). This assignment of error is without merit.
III. Invalid Verdict
In this assignment of error, Mr. Ancalade asserts that the jury rendered an invalid verdict when it found him guilty of aggravated assault with a firearm. In support of his argument, Mr. Ancalade refers to the guilty verdict form and contends that instead of finding him “guilty,” which was one of the three responsive verdicts, the jury changed the charge on the verdict form and found him “guilty aggravated assault with a firearm,” a non-responsive verdict.
According to Louisiana Code of Criminal Procedure article 810, there is “no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.” When the verdict is ambiguous, “the intent of the jury can be determined by reference to the pleadings, the evidence, the admissions of the parties, the instructions, and the forms of the verdicts submitted.” State v. Green, 2010-0791, p. 6 (La.App. 4 Cir. 9/28/11), 84 So.3d 573, 579 quoting State v. Anderson, 2007-752, p. 9 (La.App. 5 Cir. 2/6/08), 979 So.2d 566, 571.
| isUpon review of this record, it appears the verdict was not ambiguous or nonre-sponsive, and that Mr. Ancalade has misstated the jury’s actions. The verdict form actually states: “guilty (aggravated assault with a firearm).” When the jury returned with its verdict, the following exchange occurred:
The Court:
... Count two of the verdict, the Court has read the responsive verdict sheet and finds that it is proper in form and that it’s also responsive to the bill of information; however, count 1, the Court has read the verdict form and it is not responsive to the bill of information. I have to be clear. Are you finding — it’s one of three verdicts you have to do, okay, on count 1, okay, guilty as charged, okay, or guilty of attempt discharging a firearm during a violent crime or not guilty unless what I’m reading here is the violent crime that you believe he was committing while discharging a firearm? Is that what you mean?
Jury Foreman:
Yes. It was our understanding that we had to choose one of the three violent crimes. That was (sic) the answers that were proposed [by] you and the jury *899 understood that we had to choose one of those three.
The Court:
Okay, all right. Well, it wasn’t necessary to write that down, okay? Based on the question and answer between the jury and the court, the court finds that count 1 is proper in form after discussion with the jury and is responsive to the bill of information as well.
After the clarification, the jury was polled and unanimously confirmed its verdict. Considering the foregoing, the jury’s verdict is clear. This assignment of error has no merit.
IV. Excessiveness of Sentence
In his final assignment of error, Mr. Ancalade asserts that his fifteen year sentence is constitutionally excessive. In State v. Smith, 2001-2574, p. 6 (La.1/14/03), 889 So.2d 1, 4 (citations omitted), the Louisiana Supreme Court set forth the standard for evaluating a claim of excessive sentence: “A sentence is | ^constitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.” “For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e. when it imposes ‘punishment disproportionate to the offense.’” State v. Soraparu, 1997-1027 (La.10/13/97), 703 So.2d 608 quoting State v. Sepulvado, 367 So.2d 762, 767 (La.1979).
Pursuant to Louisiana Code of Criminal Procedure article 894.1(C), the trial court shall “state for the record the considerations taken into account and the factual basis therefor in imposing sentence.” Although rigid compliance with article 894.1 has been deemed unnecessary where the record clearly shows an adequate factual basis for the sentence imposed, the record should reflect considerations taken into account by the trial court in determining the sentence to aid the reviewing court in determining whether the sentence is warranted in light of the particular circumstances of the case. State v. Quebedeaux, 424 So.2d 1009, 1014-1015 (La.1982).
Mr. Ancalade was convicted of one count of illegal discharge of a firearm during a violent crime and was sentenced to fifteen years at hard labor, without benefits of parole, probation or suspension, with credit for time served. Louisiana Revised Statute 14:94(F) provides for a sentencing range of not less than ten years nor more than twenty years without benefits. Mr. Ancalade accedes that 11Rhe received a mid-range sentence, but he asserts that because “this alleged crime [was] between family members” and “no one was hurt” or “property damaged,” any sentence in excess of the statutory minimum was excessive.
The trial court did not give reasons for the sentence imposed. However, the record clearly shows that Mr. Ancalade fired multiple shots in the direction of a group of people, including children. The trial court did not abuse its discretion in handing down the less than maximum sentence allowed by law. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, Mr. Anca-lade’s conviction and sentence are affirmed.
AFFIRMED.
LOMBARD, J., concurs.

. Louisiana Code of Criminal Procedure article 536 requires that a motion to quash be in writing. Appellate counsel claims that Mr. Anealade filed a pro se motion to quash, and the docket master indicates that the trial court denied a motion to quash on November 14, 2013. However, no such motion was contained in the record lodged in this court. On August 20, 2014, appellate counsel filed a motion to supplement the record with the pro se motion to quash and the transcript of the hearing on the motion. To the motion to supplement, appellate counsel attached a copy of an unsigned, undated, pro se, handwritten motion to quash.