Judge Tiffany G. Chase
The State of Louisiana (hereinafter "the State") appeals the trial court's granting of the motion to quash the bill of information filed by the defendant, Keriana Alexcee (hereinafter "Ms. Alexcee"). Ms. Alexcee was charged with malfeasance in office, a violation of La. R.S. 14:134. The State also appeals the trial court's granting of a motion to suppress statements given by Ms. Alexcee in the course of an investigation by the Orleans Parish Sheriff's Office (hereinafter "OPSO"). The State lists two assignments of error for review. After consideration of the record before this Court and the applicable law, we find the trial court did not err in granting the motion to quash and pretermit discussion of the motion to suppress. For the reasons that follow, we affirm the ruling of the trial court quashing the bill of information.
RELEVANT FACTS AND PROCEDURAL HISTORY
Ms. Alexcee was a recruit in the employ of the OPSO. On October 17, 2016, she was assigned to work on a specialty tier of the Orleans Parish Prison (hereinafter "OPP"). A 15-year-old juvenile inmate was housed in a cell in the tier on which Ms. Alexcee was assigned and committed suicide by hanging. An investigation into the incident was conducted by Lieutenant Joseph Catalanatto (hereinafter "Lt. Catalanatto") of the OPSO. Lt. Catalanatto initially interviewed Ms. Alexcee, on the night of the incident. At the conclusion of the interview she was suspended and sent home.
As the investigation continued, Lt. Catalanatto determined that Ms. Alexcee may have violated certain policies of the OPSO. She was later called in for a second interview.
*951 At some point during the second interview, Lt. Catalanatto felt his questions were seeking to elicit potentially incriminating responses from Ms. Alexcee so he stopped and advised her of her constitutional rights. Ms. Alexcee invoked her rights and declined to answer any further questions. The investigation concluded in December of 2017. Four months later, in April of 2017, Ms. Alexcee was arrested. The State filed a bill of information alleging she "committed malfeasance in office."
On October 6, 2017, Ms. Alexcee filed a motion for a bill of particulars requesting the State to provide: (1) the subsections of La. R.S. 14:134 that were allegedly violated; (2) the lawfully required affirmative duty that was allegedly violated; and (3) how Ms. Alexcee's actions constituted a violation of said affirmative duty. The State's initial bill of particulars erroneously identified the applicable provisions of the malfeasance statute as 14:153(A)(1) and (2). The State further requested a continuance pending the Louisiana Supreme Court's review of a recent malfeasance case from this Court. An amended bill of particulars followed on February 7, 2018, stating Ms. Alexcee was being charged with a violation of La. 14:134(A)(1) and (2) and that the affirmative duties she violated were La. Const. Art. X Sec. 30, La. R.S. 14:93, and La. R.S. 15:704.[1]
On March 15, 2018, Ms. Alexcee filed a motion to quash pursuant to La. C.Cr.P. arts. 532(4) and 532(5). The State filed a second amended bill of particulars on the morning of the hearing, amending the bill of information to a violation of La. R.S. 14:134(A)(1) and alleging that Ms. Alexcee failed to perform a duty lawfully required of her, when she intentionally left her assigned post, pursuant to the consent judgment in Jones, et al. v. Gusman, et al. , EDLA 12-00859 (hereinafter "the Consent Decree").[2]
More specifically, the State cited to paragraph (d) under the "Safety and Supervision" sub-heading of the Consent Decree which states that the OPSO shall:
Continue to ensure that correctional officers conduct appropriate rounds at least once during every 30-minute period, at irregular times, inside each general population housing unit and at least once during every 15-minute period of special management prisoners, or more often if necessary. All security rounds shall be documented on forms or logs that do not contain pre-printed rounding times.[3]
The State contended that the second amended bill of particulars rendered the motion to quash moot. Ms. Alexcee disputed this contention arguing the Consent Decree failed to serve as the requisite affirmative duty of law as it imposed a duty on the OPSO rather than Ms. Alexcee individually. The matter was taken under advisement and the trial court ultimately granted the motion to quash. This appeal followed.
*952 DISCUSSION
Although the State assigns two assignments of errors for review, we pretermit discussion of the second, regarding the motion to suppress, as our disposition on the motion to quash renders the assignment moot.
A motion to quash is appropriate whenever "[a] bill of particulars has shown a ground for quashing the indictment under Article 485." La. C.Cr.P. art. 532(5). When it appears from the bill of information and bill(s) of particulars that the defendant did not commit the offense charged then a motion to quash is properly granted unless the defect is cured. La. C.Cr.P. art. 485. We review a trial court's judgment on a motion to quash de novo , accepting the facts as alleged in the bill of information and bill of particulars as true. State v. Ferguson , 2014-1305, p. 6 (La.App. 4 Cir. 9/2/15), 176 So.3d 449, 454 (citing State v. Ancalade , 2014-0379, p.10 (La.App. 4 Cir. 1/14/15), 158 So.3d 891, 897 ).
In its second amended response to Ms. Alexcee's motion for a bill of particulars, the State alleges she violated La. R.S. 14:134(A)(1) which provides:
A. Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee.
"It is the violation of an affirmative duty, coupled with the requisite wrongful, criminally culpable intent which gives rise to the crime of malfeasance." State v. Petitto , 2010-0581, p. 11 (La. 3/15/11), 59 So.3d 1245, 1252. Thus, malfeasance presupposes the existence of an affirmative duty. State v. Perez , 464 So.2d 737, 741 (La. 1985) (citing State v. Passman , 391 So.2d 1140, 1141 (La. 1980) ).
Affirmative Duty
"[T]he focus of the courts has been on whether there is a statute or provision of law which imposes an affirmative, personal duty on the public officer." Petitto , 2010-6581, at p. 9, 59 So.3d at 1251-52. Whether a federal consent decree can serve as a "provision of law" and act as the requisite affirmative duty for a charge of malfeasance in office is a matter of first impression for this Court. However, we turn our attention to the specific facts of this case prior to addressing the broader matter.[4] The question, therefore before us, *953 is whether the Consent Decree imposes an affirmative, personal duty on Ms. Alexcee sufficient to meet the requirement of La. R.S. 14:134.
The State avers the Consent Decree acts as a "provision of law" such that it satisfies the affirmative, personal duty requirement of the malfeasance statute. More specifically, the State cites to language in the Consent Decree that declares it "shall be applicable to, and binding upon all parties, their officers, agents, employees, assigns, and their successors in office." The Consent Decree also defines "staff members" to include "all employees, including correctional officers, who have contact with prisoners."
Ms. Alexcee refutes the State's contention that the language in the Consent Decree applies to her specifically. She contends the "Substantive Provisions" section makes it clear that the affirmative duty is placed upon the OPSO and not her individually. Under the "Safety and Supervision" sub-heading, the Consent Decree dictates that the "OPSO shall take all reasonable measures to ensure that prisoners are not subjected to harm or the risk of harm." It additionally mandates that the OPSO shall perform the underlying security checks the State has alleged Ms. Alexcee intentionally failed to perform. Ms. Alexcee asserts that allowing the State to prosecute individual employees of the OPSO, based on a duty that arises from the Consent Decree, is too far attenuated from its intended purpose, i.e., to secure the Sheriff's compliance and prevent constitutional deficiencies. We agree.
Consent Decree as Contract
"A consent judgment is a bilateral contract wherein parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing hope of gain against fear of loss." Plaquemines Par.Gov't v. Getty Oil Co ., 1995-2452, p. 6 (La. 5/21/96), 673 So.2d 1002, 1006. "[I]nterpretation of a consent judgment, i.e., a contract between parties, is a determination of the common intent of the parties." Mayo v. Hutchison , 2016-1642, p. 10 (La.App. 1 Cir. 9/27/17), 232 So.3d 567, 574 (citing La. C.C. art. 2045). The intent of the parties is to be determined by the words of the contract when those words are clear and explicit and lead to no absurd consequences. Id . We therefore turn to the Civil Code for guidance on interpreting the Consent Decree.
The parties to the Consent Decree are the United States Department of Justice, the class of inmates of OPP, and Sheriff Marlin Gusman in his official capacity as Orleans Parish Sheriff. The language of the Consent Decree provides, "the Parties seek to ensure the conditions in OPP protect the constitutional rights of prisoners confined there." It further charges that the Sheriff (and his successors in office) "shall ensure that the [OPSO] will take all actions necessary to comply with the provisions of [the Consent Decree]." Concordant with this mandate, the words "OPSO shall" are consistently used in the language of the "Substantive Provisions" section. "Each provision in a contract must be interpreted in light of the other provisions so that each is given meaning suggested by the contract as a whole." La. C.C. art. 2050. To that effect, a reading of the language *954 relied upon by the State, that the Consent Decree "shall be applicable to, and binding upon all parties, their officers, agents, employees, assigns, and their successors in office," is more consistent with the Consent Decree as a whole, which suggests it is intended to ensure that responsibility for the actions of individual employees flows back to its signatories. We therefore disagree with the State's contention this cited language acts to impose an affirmative, personal duty on individual OPSO employees.
In support of its delegation argument, the State cites to La. R.S. 14:134(B) which provides:
Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.
An affirmative duty by way of delegation necessarily requires a predicate affirmative duty to delegate. The public officer who delegated the duty is not absolved of that duty when it is delegated.
The "Incidents and Referrals" sub-section of the Consent Decree requires the OPSO to implement a policy providing for disciplinary infractions if a staff member fails to report a reportable incident. The failure to "report any observed prisoner injury may result in staff discipline, up to and including termination." As criminal statutes are narrowly construed, "[o]ne of the inevitable consequences of [such] construction is that some forms of analogous misconduct will fall beyond the scope of a particular statute." Perez , 464 So.2d at 746 (Lemmon, J., dissenting). In Passman , the Louisiana Supreme Court "obviously rejected the idea that the Legislature intended to adopt an open-ended offense covering general derelictions of duty" such as the one the State alleges in the case sub judice . Id .
Our interpretation of the Consent Decree is in accord with Louisiana jurisprudence interpreting the malfeasance statute. "In Passman , this court was unwilling to say that any willful dereliction of duty constituted an intentional refusal or failure to perform a duty lawfully required of the public officer by the malfeasance statute." Perez , 464 So.2d at 746. (Lemmon, J., dissenting).[5] Justice Lemmon further opined that "the malfeasance statute was not designed to punish all forms of misconduct in office" and that "[s]ome forms of misconduct by public officials are subject to other sanctions." Id . A prosecution for malfeasance should be "reserved for those cases in which a public official has blatantly abused the authority of his office and violated the public trust by his direct personal acts or failure to act." State v. Coker , 625 So.2d 190, 197-98 (La.App. 3 Cir. 1993).
In light of the law and plain language of the Consent Decree, we do not find that the Consent Decree imposes an affirmative, personal duty on Ms. Alexcee. Even accepting the facts as alleged in the bill of information and bills of particulars as true, we find the State has failed to satisfy the essential element of the existence of an affirmative, personal duty on Ms. Alexcee, a necessary prerequisite to the charge of malfeasance.
DECREE
For the foregoing reasons, the judgment of the trial court granting the motion to quash is affirmed.
AFFIRMED
LEDET, J., CONCURS WITH REASONS
*955 I write separately to address the following three issues: (1) the application of the rule of lenity in this case; (2) the scope of a hearing on a motion to quash pursuant to La. C.Cr.P. art. 532(5) and La. C.Cr.P. art. 485 ; and (3) the delegation under La. R.S. 14:134(B) of a duty imposed by law.
Rule of Lenity
Whether a judicial decree, judgment, or order may supply the "duty lawfully required" under La. R.S. 14:134 is res nova . Nonetheless, it is unnecessary to resolve that issue in this case. Even assuming, arguendo , that a judicial decree, judgment, or order may supply the duly lawfully required under La. R.S. 15:134, the language of the Consent Decree cannot be read, under the rule of lenity, to have imposed any duty on Ms. Alexcee.
Discussing the rule of lenity, the Louisiana Supreme Court has observed as follows:
The principle of lenity developed on the basis that a person should not be criminally punished unless the law has provided a fair warning of what conduct will be considered criminal. 3 N. Singer, at § 59.04. The rule does not merely reflect a convenient maxim of statutory construction, but is based on the fundamental principle of due process that no person should be forced to speculate whether his conduct is prohibited. Dunn v. United States , 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). Questions concerning the ambit of a criminal statute should be resolved in favor of lenity. Huddleston v. United States , 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974).
State v. Piazza , 596 So.2d 817, 820 (La. 1992). Thus, in considering whether there exists a duty lawfully imposed, "[t]he duty must be expressly imposed by law upon the official." State v. Perez , 464 So.2d 737, 741 (La. 1985).
One provision of the Consent Decree unambiguously imposes on the Orleans Parish Sheriff's Office ("OPSO") a duty "to ensure that correctional officers conduct appropriate rounds at least once during every 30-minute period, at irregular times, inside each general population housing unit and at least once during every 15-minute period of special management prisoners, or more often if necessary" (the "Duty"). Nonetheless, the State contends that the Consent Decree imposed the Duty on Ms. Alexcee-directly and personally-by virtue of her status as an OPSO employee. In support, the State relies on another provision of the Consent Decree that makes the Consent Decree "applicable to, and binding upon, all Parties, their officers, agents, employees, assigns, and their successors in office."
These two inconsistent provisions render the Consent Decree, at best, ambiguous as to whether it imposed "an affirmative, personal duty" on Ms. Alexcee in her role as an OPSO Deputy. State v. Petitto , 10-0581, p. 9 (La. 3/15/11), 59 So.3d 1245, 1251. Because this prosecution is based on the Consent Decree and the Consent Decree is ambiguous, the rule of lenity requires us to find that it did not impose any duty on Ms. Alexcee.[1] See *956 State v. Small , 2011-2796 (La. 10/16/12), 100 So.3d 797, 811 (observing that the rule of lenity requires that "where there is any doubt as to the interpretation of a statute upon which a prosecution is based, [the] doubt must be resolved in favor of the accused"); accord State v. Petitto , 10-0581 (La. 3/15/11), 59 So.3d 1245, 1255 (Knoll, J., dissenting) (observing that "the majority opinion disregards the well-established rule of lenity in construing La. Rev. Stat. 42:1111E(1) and 42:1112B(1) as a basis for charging a violation of an express duty of which the public official had notice, i.e. , a malfeasance charge")
Scope of Hearing
The State also contends, in the alternative, that if the Duty was not imposed on Ms. Alexcee directly, it was nonetheless delegated to Ms. Alexcee under La. R.S. 14:134(B). When a prosecution for malfeasance is based on the delegation of a duty lawfully imposed on another, delegation is an essential element of the crime. See State v. Haltom , 462 So.2d 662 (La. App. 1st Cir. 1984). Thus, when the State has employed a short-form bill of information or indictment and the defendant has requested a bill of particulars, delegation must be alleged expressly in the bill of particulars. See State v. Smith , 14-0213, p. 13 (La. App. 4 Cir. 12/17/14), 156 So.3d 1227, 1234 (finding that because "the allegations against defendant cannot satisfy the essential elements of the offense of second degree murder ... the trial court properly granted the motion to quash the bill of indictment").[2] The failure to do so warrants quashal of the prosecution. See La. C.Cr.P. art. 485 (providing that "i]f it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured").
Here, the State failed to allege, in either the bill of information or any of the three bills of particulars, that the Duty was delegated by the OPSO to Ms. Alexcee.[3] Nonetheless, the State relies on testimony-rendered in connection with Ms. Alexcee's motion to suppress statement-that, as an employee of the OPSO, Ms. Alexcee received *957 extensive training regarding the Duty. As the State repeatedly acknowledges in brief, however, "[a]t a hearing on [a motion to quash], evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court." State v. Byrd , 96-2302, p. 18 (La. 3/13/98), 708 So.2d 401, 411 (observing that "[i]n considering a motion to quash, a court must accept as true the facts contained in the bills of information and in the bill of particulars, and determine as a matter of law and from the face of the pleadings , whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits") (emphasis added). Thus, the testimony relied on by the State was outside the scope of the hearing on the motion to quash; and the State's failure to allege the essential element of delegation constitutes a defect in the bill of information.
Delegation
Ordinarily, when there is a defect in the bill of information that the State has not been afforded an opportunity to cure, we would vacate the judgment of the district court and remand to allow the State to cure the defect. See State v. Estem , 18-0560 (La. App. 4 Cir. 9/26/18), 2018 WL 4623176 (unpub. ). In this case, however, the evidence adduced at the hearing on the motion to suppress statement-and here relied on by the State in opposition to the motion to quash-demonstrates that the State cannot cure the defect. Thus, to vacate and remand would be "a vain and useless act," which the law does not require. State v. Hageman , 123 La. 802, 813, 49 So. 530, 534 (1909) ; see also La. C.Cr.P. art. 921 (providing that "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused").
The duty the State claims to have been delegated-expressly and unambiguously imposed by the Consent Decree on the OPSO-is an institutional duty "to ensure that correctional officers conduct appropriate [security] rounds ... at least once during every 15-minute period of special management prisoners." While such an institutional duty may be delegable to a person holding a position of supervisory authority over other employees, the testimony at the hearing failed to establish that this institutional duty was, in fact, delegated by the OPSO to Ms. Alexcee.[4]
In any event, the testimony reflects that the duty the State actually claims Ms. Alexcee failed to perform is not the duty "to ensure that correctional officers conduct appropriate [security] rounds ... at least once during every 15-minute period of special management prisoners." Instead, the the State claims Ms. Alexcee failed to perform a different duty-the individual duty of correctional officers (like Ms. Alexcee) to actually conduct security rounds. While such a duty may exist as a matter of OPSO policy-on which the State does not rely-it is not expressly set forth in the the Consent Decree. Thus, the OPSO could not have delegated this non-existent duty to Ms. Alexcee.
*958 Finally, although it is possible to construe the institutional duty set forth in the Consent Decree broadly enough to embrace an individual duty of correctional officers to conduct security rounds, such a broad construction is foreclosed by the rule of lenity. State v. Ritchie , 590 So.2d 1139, 1149 (La. 1991) (on reh'g ) (Dec. 12, 1991) (observing that "[t]he principle of lenity directs that a court construe a criminal statute in favor of the most narrow application when there are serious doubts concerning a meaning of a term"). Thus, even if the State were allowed to amend its bill of particulars, the State would not be able to allege facts sufficient to establish the essential element of delegation. Thus, vacating and remanding for amendment of the bill of particulars would be improper. See State v. Legendre , 362 So.2d 570, 571 (La. 1978) (observing that "[i]t will not do to base an indictment for a serious offense, as in this case, upon an allegation of fact which cannot conceivably satisfy an essential element of the crime, and compel the accused to withstand the rigors of a jury trial with no expectation that a conviction can be supported by such an allegation").
In sum, I would find the language of the Consent Decree relied on by the State is ambiguous and that the rule of lenity thus requires a finding that the Consent Decree did not impose the Duty on Ms. Alexcee personally. The State failed to allege in any of its bills of particulars that OPSO delegated the Duty to Ms. Alexcee-here, an essential element of the crime of malfeasance. Vacating the district court's judgment and remanding to allow the State to amend its bill of particulars would be improper because the State can allege no set of facts sufficient to establish that OPSO delegated any duty to Ms. Alexcee. Accordingly, I concur.

The State has abandoned these grounds as they were only obliquely referenced at the hearing and are not briefed or relied upon on appeal. See Uniform Rule, Courts of Appeal, Rule 2-12.4(B)(4).

The Consent Decree was entered into to correct the violations of federal rights at OPP as alleged by the prisoners and the United States Department of Justice.

The Consent Decree further defines "special management units" as those housing units designated for offenders under the age of 17, in protective custody, on suicide prevention or in administrative or disciplinary segregation.

In Passman , the Louisiana Supreme Court pretermitted the issue of whether the violation of administrative regulations could serve as the basis for a charge of malfeasance. 391 So.2d at 1144. In Perez , Justice Lemmon dissented from the majority's holding that the Oath of Office provision in La. Const. Art. X, Sec. 30 could also act as an affirmative duty. 464 So.2d at 746 (Lemmon, J., dissenting). "The [Passman ] court held that the defendant's misconduct did not constitute the crime of malfeasance if no statute delineated the affirmative duty that defendant was charged with failing to perform. By adopting this narrow 'express legislative requirement' approach, the court obviously rejected the idea that the Legislature intended to adopt an open-ended offense covering general derelictions of duty." Id . Justice Lemmon concluded that the issue is "whether the bill of information charges conduct that involves the failure to perform a specific duty expressly defined by the Legislature." Id . In Petitto , the majority of the Court affirmatively cited Justice Lemmon's appreciation of the jurisprudence defining "malfeasance in office as the intentional failure to perform a specific duty expressly defined by the legislature ." 2010-0581, p. 8, 59 So.3d at 1251 (emphasis in original). However, the Court slightly diverged from Justice Lemmon's rational by opining that "[a]lthough criminal statutes are subject to strict construction under the rule of lenity, the rule is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which is to ascertain and enforce the true meaning and intent of the statute."Id ., 2010-0581, p. 7, 59 So.3d at 1250 (citing State v. Shaw , 2006-2467, p. 14 (La. 11/27/07), 969 So.2d 1233, 1242 ). The Louisiana Supreme Court still abides by its holding in Petitto . See, e.g. , State v. Thompson, 2015-0886, p. 43 (La. 9/18/17), 233 So.3d 529, 556. However, the door left open in Passman regarding the ability of administrative regulations or potentially other "provisions of law" to meet the affirmative duty requirement necessary for malfeasance is presumably still open to this day.

As previously noted Justice Lemmon's appreciation of the holding in Passman was affirmatively cited by the majority of the Louisiana Supreme Court in Petitto .

The State contends, essentially, that the rule of lenity should not apply in this case because Ms. Alexcee was aware of the Duty and that it applied to her. In support, the State contends that it "presented Lt. Catalanatto's testimony regarding the defendant's actions on October 17, 2016 and her training, submitted numerous documents pertaining to the defendant's training, and submitted the [Consent Judgment] to establish an affirmative duty." This argument fails for two reasons. First, as discussed elsewhere in this concurrence, none of that evidence was admissible at the hearing on the motion to quash. Second, none of that evidence is relevant; the law itself-without recourse to additional notice-must be unambiguously clear. See Perez , supra . (observing that "the duty must be expressly imposed by law upon the official because the official is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will subject him to criminal charges").

See also State v. Schmolke , 12-0406, pp. 3-4 (La. App. 4 Cir. 1/16/13), 108 So.3d 296, 299, observing that:
Essentially, the inquiry is whether any conceivable set of the facts as alleged in the bill of information together with those specified in the bill of particulars (when particulars have been provided) if "found credible by the trier of fact" can support a conviction. State v. Advanced Recycling, Inc. , 02-1889, pp. 9-10 (La. 4/14/04), 870 So.2d 984, 989. And support for a conviction, of course, requires that any reasonable trier of fact considering the evidence in the light most favorable to the prosecution could conclude that every element of the offense charged has been proven beyond a reasonable doubt. See Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; see also [State v. Lagarde, 95-1497, p. (La. App. 4 Cir. 4/3/96), 672 So.2d 1102, 1104 ].

Indeed, it was not until the third bill of particulars that the State relied on the Consent Decree as the source of the duty lawfully imposed.

To establish that this institutional duty was, in fact, delegated to Ms. Alexcee, the State relies on testimony that Ms. Alexcee, in connection with her employment at OPSO, received training regarding OPSO's duty "to ensure that correctional officers conduct appropriate [security] rounds ... at least once during every 15-minute period of special management prisoners." The allegation that Ms. Alexcee received training to ensure that the OPSO was compliant with its duty, however, does not establish that the duty was delegated to Ms. Alexcee. To the contrary, the allegation that Ms. Alexcee received such training demonstrates that OPSO retained , rather than delegated, the duty.