SANDRA CABRINA JENKINS, Judge.
pThe State appeals the trial court’s judgment granting Laderika Smith’s motion to quash the indictment charging her with the second degree murder of her five-year old daughter, B.S.,[1] in violation of La. *1229 R.S. 14:30.1(A)(2). The second degree murder indictment was based on allegations that defendant committed the predicate felony of cruelty to juveniles, by neglect and lack of supervision, in violation of La. R.S. 14:93. In her motion to quash, defendant argued that, as a matter of law, the allegations contained in the indictment and bill of particulars cannot support a conviction for second degree murder, pursuant to the Louisiana Supreme Court’s holding in State v. Small, 11-2796 (La.10/16/12), 100 So.3d 797. Following a hearing on the motion, the trial court granted defendant’s motion to quash the indictment.
Upon our de novo review of the record, we affirm.
PROCEDURAL AND FACTUAL BACKGROUND
On July 11, 2013, the grand jury indicted defendant for one count of second degree murder of her daughter, B.S., on June 23, 2013. On July 17, 2013, |2defendant appeared for arraignment and entered a plea of not guilty to the indictment. On July 26, 2013, defendant filed a written motion to quash the indictment and, on August 7, 2013, defendant filed a motion for bill of particulars. The State filed opposition to both of defendant’s motions. Subsequently, on August 27, 2013, the State filed a bill of particulars. On August 30, 2013, the State filed its opposition to defendant’s motion to quash. On the same date, the trial court convened a bond hearing and a hearing on the motion to quash. The hearing was kept open and continued until September 20, 2013. On that date, the trial court heard further testimony and arguments on the motion to quash and took the matter under advisement. On September 26, 2013, the trial court granted defendant’s motion to quash and issued written reasons.
The record before this Court on the appeal of the motion to quash the indictment is limited to the pre-trial documents and transcripts of the hearing on the motion. The facts relevant to this appeal are set forth in the police report and by the testimony of the lead detective, Detective Robert Barrerre.
On June 23, 2013, the New Orleans Police Department received a 911 call from defendant informing that her daughter had found a gun and shot herself at their residence at 2221 Galvez Street. Responding police officers arrived at the scene and observed the victim, five-year old B.S., suffering from a gunshot wound to the head. An ambulance soon arrived on the scene and transported the victim to University Hospital, where she arrived in critical condition. The victim died as a result of her injuries later that day.
lijDet. Barrerre and his partner, Det. Travis Ward, arrived at the residence to investigate the shooting. In their initial interview with the defendant, she stated that at around 10:35 a.m. she left the victim alone watching television at the residence while she went to the grocery store to buy some milk. On her way to the store, defendant observed an altercation between two people she knew; she approached and talked with the individuals for approximately ten minutes. When she returned to the residence, defendant looked through the house for the victim. Defendant found the victim lying on the floor of the bedroom closet with a massive wound to her forehead and a firearm lying next to her on the floor. Defendant immediately called 911 and remained with the victim until she was transported to the hospital. Defendant stated to the officers that she lived at the residence with the victim and defendant’s cousin, “Leon Speedy” Warren.
Outside of the residence, detectives spoke with Lawrence Williams, a cousin of defendant. Williams stated that defendant *1230 and “Speedy” were cousins and both lived at the residence on Galvez Street. Williams informed detectives that defendant and “Speedy” were heroin addicts and he felt the victim should not have been living with defendant due to her history of negligence.
Detectives then relocated to NOPD headquarters with defendant and Warren. Detectives conducted formal interviews with defendant and Warren, who were both advised of their Miranda rights[2] and whose statements were audio and video recorded. Warren stated that he owned a .38 Taurus revolver and he kept the |4gun in the front bedroom closet on a shelf underneath clothing. Warren stated that the victim had seen the handgun previously, but she did not know the location where he kept it and she was too short to reach it in the closet. Defendant stated that she knew Warren kept a handgun in the house and she had observed him place it in the closet a few days prior to the incident. Defendant also stated that the victim had told her grandmother that she had seen a gun in the house. After the interviews, Det. Barrerre arrested defendant on a charge of cruelty to a juvenile. At the time of the arrest, the victim was still alive.
Detectives also interviewed Zina Smith, the grandmother of the victim. She stated that a week prior to the shooting, the victim and the victim’s eight-year old sister informed her that Warren kept a gun under his pillow in the bedroom. Ms. Smith also advised that defendant often left the victim alone at home, particularly when defendant was in search of narcotics. Ms. Smith told detectives that defendant used heroin and pills and had been a negligent parent.
At approximately 4:25p.m., on June 23, 2014, Det. Barrerre learned that the victim had died from her injuries. He also learned from preliminary tests and autopsy findings that gunshot residue was found on the victim’s hands and the gunshot wound to her forehead was likely self-inflicted. Based on this evidence and the interview with defendant, Det. Barrerre determined that the investigation and evidence supported a charge of second degree murder, under La. R.S. 14:30.1, based on the defendant’s cruelty to a juvenile. In the application for arrest warrant for defendant, Det. Barrerre stated that defendant’s criminally negligent act of | ¡¡leaving her daughter unsupervised in a residence where a firearm was present resulted in the victim’s death. On June 24, 2013, the magistrate found probable cause in the application and signed the arrest warrant for defendant on the charge of second degree murder. Defendant was in jail on the charge of cruelty to a juvenile; she was rebooked on the charge of second degree murder.
ASSIGNMENT OF ERROR
In its sole assignment of error, the State contends that the trial court abused its discretion in granting defendant’s motion to quash the indictment. The State argues the trial court’s ruling was based on the merits of the charge against defendant, which is not a proper grounds for quashal pursuant to La.C.Cr.P. art. 532.
LAW & DISCUSSION
All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of ‘not guilty' and of ‘not guilty by reason of insanity,’ shall be urged by a motion to quash. La.C.Cr.P. art. 531. A motion to quash is a mechanism whereby the trial court considers pretrial pleas that do not go to the merits of the charge. State v. Byrd, 96-2302 (La.3/13/98), 708 So.2d 401, 411. The general grounds on *1231 which a motion to quash may be based are listed within La.C.Cr.P. art. 532. Pursuant to La.C.Cr.P. art. 532(A)(1) and (5), a motion to quash is appropriate where | fithe indictment fails to charge a punishable offense under a valid statute, or where the bill of particulars raises grounds for quashing the indictment under La.C.Cr.P. art. 485. See State v. Schmolke, 12-0406, p. 2 (La.App. 4 Cir. 1/16/13), 108 So.3d 296, 298.
Regarding the bill of particulars, La.C.Cr.P. art. 485 provides, in pertinent part:
If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured.
The trial court’s consideration of a motion to quash is confined to questions of law. State v. Franklin, 13-0488, p. 4 (La.App. 4 Cir. 10/9/13), 126 So.3d 663, 667; Schmolke, 12-0406, pp. 2-3, 108 So.3d at 298. The trial court must accept as true the facts contained in the indictment and the bill of particulars and decide, as a matter of law, whether or not a crime has been charged. Byrd, 96-2302, 708 So.2d at 411. In Byrd, the Louisiana Supreme Court noted that it is a question of “whether the indictment charges a valid offense. If it does not, it is a defective indictment and its invalidity may be declared by a ruling on a motion to quash,” based on the ground that the indictment fails to charge a punishable offense under a valid statute. Id. (quoting State v. Legendre, 362 So.2d 570, 571 (La.1978)). “It will not do to base an indictment for a serious offense ... upon an allegation of fact which cannot conceivably satisfy an essential element of the crime.” Legendre, 362 So.2d at 571. As explained by this Court in Schmolke,
Essentially, the inquiry is whether any conceivable set of the facts as alleged in the bill of particulars (when particulars have been provided) if ‘found credible by the trier of fact’ can support a conviction. State v. Advanced Recycling, Inc., 02-1889, pp. 9-10 (La.4/14/04), 870 So.2d 984, 989. And support for a conviction, of course, requires that any reasonable trier of fact considering the evidence in the light most favorable to the prosecution could conclude that every element of the offense charged has been proven beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see also Lagarde, 672 So.2d at 1104.
12-0406, pp. 3-4, 108 So.3d at 299.
The trial court’s ruling on the motion to quash is ultimately a question of law, subject to de novo review on appeal. State v. Olivia, 13-0496, pp. 2-3 (La.App. 4 Cir. 3/26/14), 137 So.3d 752, 754 (citing Franklin, 13-0488, p. 6, 126 So.3d at 668).
In her motion to quash, defendant argues that the Louisiana Supreme Court’s decision in State v. Small, 11-2796 (La.10/16/12), 100 So.3d 797, precludes the State from predicating a second degree murder charge on defendant’s negligent act of lack of supervision. Defendant asserts that the bill of indictment and bill of particulars lack any allegation that a direct act of defendant caused the victim’s death. Due to the lack of a direct causal connection, defendant argues that the indictment fails to meet the requirements of the felony murder rule; thus, the State cannot prove beyond a reasonable doubt all essential elements necessary to support a conviction for second degree murder.
*1232 In Small, the Louisiana Supreme Court reversed the defendant’s conviction for second degree felony murder based on the underlying felony of cruelty to juveniles. 11-2796, p. 1, 100 So.3d at 799. The defendant, a mother of two children aged six and seven years old, left her children alone, asleep, and unsupervised at their apartment at 10p.m. to go drink alcohol at the home of a lsfriend. While defendant was away, a fire started in the apartment. The children were unable to escape the apartment. By the time the fire department entered the apartment, one of the children had stopped breathing and died as a result of smoke inhalation. At trial, the State presented evidence that the defendant had previously pled guilty to criminal abandonment, in relation to her lack of supervision of her children, as proof of a history of criminally negligent behavior and cruelty to juveniles. At the conclusion of trial, the jury convicted defendant of second degree murder on the predicate offense of cruelty to juveniles. The Second Circuit Court of Appeal affirmed defendant’s conviction. The Louisiana Supreme Court granted defendant’s writ application to determine whether the criminally negligent act of lack of supervision, and not a direct act causing the child’s death, could support a second degree murder conviction. Small, 11-2796, p. 10, 100 So.3d at 805.
First, the Court considered how the offense of cruelty to juveniles fits within the scope of the felony murder statute in Louisiana. Under Louisiana law, La. R.S. 14:30.1 provides in pertinent part,
(A) Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of ... cruelty to juveniles, second degree cruelty to juveniles ... even though he has no intent to kill or to inflict great bodily harm.
La. R.S. 14:30.1(A)(2) is considered felony murder. Rather than proving defendant’s specific intent to commit the killing, the commission of the underlying felony supplies the requisite criminal culpability for the actions that result in the victim’s death. See Small, 11-2796, pp. 10, 100 So.3d at 805; see State v. McElveen, 10-0172, p. 89 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1088. Under the facts of Small,
[t]he underlying felony that defendant was found to have committed was cruelty to juveniles, which is defined in La. R.S. 14:93(A)(1) as the ‘intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child.’ Essentially, the state argued that defendant was criminally negligent for leaving her young children unsupervised and that her absence caused her daughter to die in the fire.
11-2796, pp. 10-11, 100 So.3d at 805.
The Court noted that criminal negligence exists where neither specific nor general intent is present; rather, criminal negligence is defined as a total disregard for the interest of others such that defendant’s conduct grossly deviates from the standard of care expected to be maintained. Id.; see La. R.S. 14:12. Criminal negligence involves the lack of intent and lack of action. “Unlike general or specific criminal intent, criminal negligence is essentially negative. Rather than requiring the accused to intend some consequence of his actions, criminal negligence is found from the accused’s gross disregard for the consequences of his action.” State v. Martin, 539 So.2d 1235, 1238 (La.1989)
*1233 By contrast, Louisiana jurisprudence interprets the felony murder rule to require that a direct act of defendant cause the death of the victim. Small, 11-2796, p. 12, 100 So.3d at 806; State v. Myers, 99-1849 (La.4/11/00), 760 So.2d 310; State v. Kalathakis, 563 So.2d 228 (La.1990); State v. Garner, 238 La. 563, 115 So.2d 855 (1959). In these cases, the Louisiana Supreme Court specifically rejected a 11 (/‘proximate cause” test by which a defendant may be held liable for any death proximately caused or resulting from the events set into motion by defendant’s actions. Small, 11-2796, p. 16, 100 So.3d at 809; Myers, 99-1849, pp. 8-9, 760 So.2d at 316. Instead, Louisiana courts have adopted the “agency test,” which requires a direct act by the defendant in committing the killing. As the Louisiana Supreme Court first reasoned in Gamer and discussed in Myers,
[B]y employing the term ‘offender’ in the felony [murder] statute, the legislature has proscribed that the physical element may only be shown by proof that the defendant or an accomplice performed the direct act of killing. Taken in the context of the surrounding words, the term ‘offender’ plainly refers to the person who performed the act of killing while simultaneously engaged in the perpetration of an unenumerated felony.
Myers, 99-1849, p. 7, 760 So.2d at 315. In Small, the Court further explained that second degree felony murder is a crime of violence, which is defined as “an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, ■ by its very nature, involves a substantial risk that physical force against the person or property of another may be used ...” La. R.S. 14:2(B). While acknowledging that cruelty to juveniles can take many forms that include physical force and direct acts of abuse, “neglect in the form of lack of supervision simply cannot supply the direct act of killing needed for a second degree felony murder conviction.” Small, 11-2796, p. 18, 100 So.3d at 810.
In Small, the Louisiana Supreme Court examined and rejected, as a matter of law, a conviction under the felony murder statute based on the criminally | ^negligent act of lack of supervision of a child. ■ “An interpretation of the felony murder statute to allow a second degree murder conviction anytime a parent is criminally negligent in failing to supervise her child and the child dies as a result of some intervening act would be contrary to the rule of lenity and could result in unintended consequences.” Small, 11-2796, p. 19, 100 So.3d at 811.
The Court ultimately vacated the conviction and sentence for second degree murder but remanded the case for resentenc-ing on a conviction of negligent homicide. The Court found the evidence presented at trial, viewed in the light most favorable to the state, was “sufficient to convince a rational trier of fact that defendant’s neglect was a legal cause of her daughter’s death.” Small, 11-2796, p. 23, 100 So.3d at 813. “[U]nlike second degree murder, negligent homicide does not require a ‘direct act’ of killing by the defendant. Negligent homicide is ‘the killing of a human being by criminal negligence.’ La. R.S. 14:32.... There can be no debate that defendant’s conduct was criminally negligent.” Id., p. 20, 100 So.3d at 811-12.
In the instant case, this Court is not reviewing the entire record of evidence from a trial. In our review of the motion to quash, this Court must consider only the facts alleged within the bill of indictment and bill of particulars to inquire whether there is any conceivable set of factual allegations that can support a conviction for second degree murder, as a matter of law. Upon our de novo review, we conclude there is not.
The bill of indictment charges defendant with second degree murder without *1234 indicating the statute number, La. R.S. 14:30.1, and subsection of the statute under which defendant is charged. In her motion for bill of particulars, defendant requested for the State to provide the subsection of the statute under which defendant was charged. Defendant also requested the State provide more specific allegations of defendant’s conduct or actions that serve as the basis for the -violation of La. R.S. 14:30.1. In response, the State answered each of defendant’s requests by referring defendant directly to the police report of the incident. (“This information was provided to the defense in the police report.”) Thus, the facts alleged in the police report serve as the allegations in the bill of particulars that this Court considers in our review of the motion to quash.
Upon reviewing the police report and the testimony of Det. Barrerre, who prepared the police report, we find allegations only of defendant’s negligence in relation to the death of the victim. The report states that defendant left the victim alone and unsupervised for a period of time during which the victim shot herself. The victim’s death is reported as self-inflicted. The report also states that defendant was not present at the residence when the victim shot herself. There are no factual allegations of any direct act by the defendant causing the death of the victim. Det. Barrerre also testified that the basis for defendant’s arrest for cruelty to a juvenile, and the basis for the second degree murder charge, was defendant’s neglectful conduct in leaving the victim alone in the house where a gun was present. Thus, the second degree murder charge is predicated on allegations that ¡^defendant negligently failed to supervise her child and that lack of supervision resulted in the child finding a gun and shooting herself.
We find the Louisiana Supreme Court’s analysis in Small is directly on point and the Court’s holding precludes this bill of indictment for second degree murder based on negligent lack of supervision. Based on the statutory language in La. R.S. 14:30.1(A)(2), the statutory definitions of crime of violence and criminal negligence, the jurisprudence requiring a killing as a result of a direct act by the defendant, and the rejection by the Louisiana Supreme Court of the proximate cause test in felony murder cases, there is no set of facts in this case that can support a conviction of defendant for second degree murder based on defendant’s criminally negligent lack of supervision of her child. As a matter of law, the allegations against defendant cannot satisfy the essential elements of the offense of second degree murder. Therefore, we find the trial court properly granted the motion to quash the bill of indictment. We find no merit to the State’s assignment of error.
CONCLUSION
For the foregoing reasons, we find no error in the trial court’s judgment granting defendant’s motion to quash. We affirm.
AFFIRMED

. It is the policy of this Court to use the initials of juvenile victims. See also La. R.S. 46:1844.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).