STATE OF LOUISIANA      *      NO. 2020-KA-0494

VERSUS      *

     COURT OF APPEAL

LOUIS BARNES      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 545-500, SECTION "G"
Honorable Jay Daniels, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

Leon Cannizzaro
DISTRICT ATTORNEY
Donna Andrieu
ASSISTANT DISTRICT ATTORNEY
CHIEF OF APPEALS
Irena Zajickova
ASSISTANT DISTRICT ATTORNEY
PARISH OF ORLEANS
619 S. White Street
New Orleans, LA 70119
     COUNSEL FOR APPELLANT/STATE OF LOUISIANA

Leon Roche II
Colin Reingold
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, 7th Floor
New Orleans, LA 70119
     COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**

**JANUARY 27, 2021**

*DLD*
*RLB*
*JCL*

The State of Louisiana appeals a trial court judgment that granted a motion to quash filed by defendant, Louis Barnes. Because we find that the trial court impermissibly weighed the evidence in consideration of the motion to quash, we reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

In the very early hours of February 24, 2019, a verbal altercation occurred between Mr. Barnes and Nicholas Knox, a security guard for the Willie's Chicken Shack located on Bourbon Street. When the altercation became physical, Mr. Knox withdrew a gun, and shots were fired from that gun.[1] Both Mr. Barnes and Mr. Knox were shot during this altercation, and another person, Julie Couvillion, who had been walking along Bourbon Street, was shot as well. Ms. Couvillion died as a result of the shooting.

---

[1] As discussed more fully herein, the number of gunshots and the trajectory of those gunshots are critical issues in this case.

1

By bill of information dated May 6, 2019, Mr. Barnes was charged with three felonies: (1) manslaughter with respect to Ms. Couvillion's death;[2] (2) the attempted second degree murder of Mr. Knox;[3] and (3) possession of a firearm by a felon.[4]

On May 20, 2019, Mr. Barnes filed a motion for a bill of particulars[5] requesting, seeking information from the State. With respect to the manslaughter charge, Mr. Barnes sought information as to which section(s) of La. R.S. 14:31 the State alleged applied to the offense with which Mr. Barnes was charged. In the event that the State was proceeding under La. R.S. 14:31 A(2)(a), Mr. Barnes sought information as to which felony "enumerated in article 30 or 31.1" the State alleged "Mr. Barnes was engaged in [with respect to] the perpetration or attempted perpetration of [manslaughter]." In response, the State confirmed that it was proceeding against Mr. Barnes pursuant to La. R.S. 14:31(A)(2)(a).[6]

On December 6, 2019, Mr. Barnes filed a Motion to Quash with respect to the manslaughter charge, based on the "agency test," a jurisprudential rule first enunciated in *State v. Garner*, 115 So.2d 855 (La. 1959). Finding merit to the motion, on January 31, 2020, the trial court granted the motion and quashed the felony manslaughter charge. This appeal followed.

---

[2] La. R.S. 14:31.
[3] La. R.S. 14:27; La. R.S. 14:30.1.
[4] 14:95.1. Mr. Barnes had previously been convicted in Jefferson Parish of felony carnal knowledge of a juvenile.
[5] A bill of particulars requires the district attorney to set forth "more specifically the nature and cause of the charge against the defendant." La.C.Cr.P. art. 484.
[6] Under La. R.S. 14:31(A)(2)(a), manslaughter is defined as follows:
> (2) A homicide committed, without any intent to cause death or great bodily harm.
>> (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person.

The State listed the following offenses in which Mr. Barnes was engaged at the time of the manslaughter: La. R.S. 14:94, La. R.S. 14:95.1, La. R.S. 14:15, and/or La. R.S. 14:37.

**DISCUSSION**

A motion to quash is "a mechanism whereby pre-trial pleas are urged, i.e., pleas which do not go to the merits of the charge." *State v. Marcelin*, 13-0893, p. 3 (La. App. 4 Cir. 12/18/13), 131 So.3d 427, 430 (citations omitted). "All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of 'not guilty' and of 'not guilty and not guilty by reason of insanity,' shall be urged by a motion to quash." La. C.Cr.P. art. 531.

A court considering a motion to quash "must accept as true the facts contained in the bill of information and in the bill of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged." *State v. Landry*, 13-1030, p. 4 (La. App. 4 Cir. 5/7/14), 144 So.3d 1078, 1081 (citations omitted). As such, the decision on a motion to quash is based strictly on legal issues and is therefore subject to a *de novo* standard of review. *State v. Hall*, 13-0453, p. 11 (La. App. 4 Cir. 10/9/13), 127 So.3d 30, 38-39.

In *Marcelin*, this Court explained the well-settled principles regarding a trial court's analysis of a motion to quash:

> The scope of permissible consideration by the trial court on a motion to quash an indictment or bill of information is similar to an exception of no cause of action in a civil suit. *See State v. Schmolke*, 12-0406, pp. 2-3 (La. App. 4 Cir. 1/16/13), 108 So.3d 296, 298. *See also State v. Gerstenberger*, 260 La. 145, 255 So.2d 720, 723 (1971). Thus, "[a] judge's consideration of a motion to quash is confined to questions of law and, as a general rule, does not extend to defenses based upon factual findings." *Schmolke*, 12-0406 at p. 2, 108 So.3d at 298. This is because the question raised by a motion to quash is not of the factual guilt or innocence of the offense charged as that is an appropriate determination for the fact-finder at trial. *See State v. Perez*, 464 So.2d 737, 740 (La. 1985). *See also [State v.] Byrd*, 96-2302 [p. 18 (La. 3/13/98), 708 So.2d 401,] 411; *State v. Patterson*, 301 So.2d 604, 604 (La. 1974). Rather, the trial judge's range of

3

> permissible actions is limited to those matters which do not go to the merits of the charge.

*Marcelin*, 13-0893, p. 4 (La. App. 4 Cir. 12/18/13), 131 So.3d 427, 430.

There are numerous grounds for quashing a bill of particulars as set forth in La. C.Cr.P. arts. 532 and 534.[7] In the instant matter, the trial court specified that it was granting Mr. Barnes' motion to quash pursuant to La. C.Cr.P. art. 532, "paragraph one," which the trial court noted, provides that "an indictment or bill of information must be quashed when it fails to charge an offense which is punishable under a valid statute."[8] In so ruling, the trial court found in its detailed judgment that it "[v]iew[ed] the evidenced in the light most favorable to the State . . . , [as well as] the testimony of the State's witnesses," and applied the "agency test" to quash the manslaughter charge against Mr. Barnes.

The "agency test" has as its foundation the principle that the "felony murder rule . . . require[s] that a direct act of a defendant or his accomplice cause the death of the victim." *State v. Small*, 11-2796, p. 12 (La. 10/16/12), 100 So.3d 797, 806. Our jurisprudence has "specifically rejected a 'proximate cause' test by which a defendant may be held liable for any death proximately caused or resulting from the events set into motion by defendant's actions." *State v. Smith*, 14-0213, pp. 9-10 (La. App. 4 Cir. 12/17/14), 156 So.3d 1227, 1233 (citations omitted). "Instead, Louisiana courts have adopted the 'agency test,' which requires a direct act by the defendant in committing the killing." *Id.*, p. 10, 156 So.3d at 1233.

---

[7] The grounds set forth in these articles "are merely illustrative." *Marcelin*, 13-0893, p. 4, 131 So.3d at 430.

[8] La. C.Cr.P. art. 532 provides, in pertinent part, as follows:

> A motion to quash may be based on one or more of the following grounds:
> (1) The indictment fails to charge an offense which is punishable under a valid statute.

4

This Court recently illustrated the use of the "agency test" in *State v. Trung Le*, 17-0164, pp. 13-14 (La. App. 4 Cir. 4/11/18), 243 So.3d 637, 653, *writ denied*, 18-0741 (La. 1/18/19), 262 So.3d 285, and *writ denied*, 18-0755 (La. 1/18/19), 262 So.3d 286, as follows: "when A shoots at B and B returns fire, killing C, A cannot be found guilty of a homicide against C because the act resulting in the homicide was neither actually or constructively the act of A."

In the instant matter, the trial court based its ruling on testimony adduced at an October 24, 2019 preliminary examination at which two witnesses, New Orleans Police Officer Patrick Macfarlane and Detective Bruce Brueggeman, testified. Officer Macfarlane testified that, while he was on assignment in the 400 block of Bourbon Street on February 24, 2019, he heard two gunshots, approximately 15 seconds apart. He and his partner headed towards the Willie's Chicken Shack at which time he saw Mr. Barnes fleeing the scene with what appeared to be a wound to his shoulder. He and his partner apprehended Mr. Barnes.

Detective Brueggeman testified that he was called to the scene of a homicide in the 400 block of Bourbon Street on February 24, 2019. There, he learned that three people had been shot: a security guard, a female who had been walking on Bourbon Street and who had died, and the possible perpetrator. Detective Brueggeman summarized the witness accounts of the events from interviews conducted by NOPD homicide detectives and his review of videotaped footage of the altercation, as follows:

> It was a verbal altercation between a security guard for
> Willie's Chicken Shack and a customer. The verbal
> altercation led to a physical altercation where it appeared
> by looking at the video and witness testimony that the
> [security guard] was severely losing the physical

5

> altercation, felt it was necessary to retrieve his firearm to protect himself and others in the area. A shooting occurred and that was pretty much it.

Detective Brueggeman later learned that the man engaged in the altercation with the security guard was Mr. Barnes. He then testified that the decedent (Ms. Couvillion) was walking down the street when she was "struck in the throat and face, she immediately dropped at that location and died right there."

According to Detective Brueggeman, two bullet casings associated with the shooting were recovered at the scene. Ms. Couvillion's companion and other witnesses reported hearing two gunshots. Detective Brueggeman interviewed Mr. Knox, who told him that he fired the first shot, which struck and went through Mr. Barnes' arm. Detective Brueggeman indicated that the videotape footage reflected that Ms. Couvillion fell at the same time that the crowd on Bourbon Street reacted to the first gunshot, by fleeing the scene.[9] Based on the physical evidence and witness accounts, Detective Brueggeman believed that two gunshots were fired, although one witness indicated that she heard three gunshots.

The trial court considered the testimony from the preliminary examination and found that the evidence "clearly shows Mr. Knox fired the fatal shot and that [Mr. Barnes] was not acting in concert with Mr. Knox when Ms. Couvilion [sic] was killed." Thus, the trial court, citing *Garner* for the principle that "the Court [in *Garner*] was "constrained to conclude and hold that LSA-R.S. 14:31 imposes no liability on the defendant," concluded that Mr. Barnes "cannot be held criminally responsible for the death of Ms. Couvillion under the 'felony-manslaughter' or 'misdemeanor-manslaughter' doctrine."

---

[9] Detective Brueggeman testified that approximately nineteen seconds elapsed between the first and second gunshots.

6

While the *Garner* Court did affirm the grant of a motion to quash an indictment based on a finding that the defendant did not fire the shot that killed the victim, the *Garner* case has a critical distinction from the instant matter. In *Garner*, all parties stipulated to the underlying facts. *See Garner*, 115 So.2d at 566, 568. Here, there is no such stipulation and more importantly, when questioned by the trial court as to whether the State would stipulate to the facts as set forth in Mr. Barnes' motion to quash, the State repeatedly indicated that it would not. To the question of whether the State would "concede that the first shot is the shot that killed Ms. Couvilion [sic]," counsel for the State replied that it would not, as "that is an issue that needs to be determined by the jury." Nor would the State concede that Ms. Couvillion "is clearly seen [on the videotape footage] falling to the ground after the first shot was fired," explaining:

> . . . establishing when the shot was fired is a matter of dispute because the video does not have sound. I don't dispute that she can be seen going towards the ground. I don't know if that's falling because of a bullet wound. I don't know if that's falling because she heard a shot fired. I don't know if she's falling because someone yelled, "He's got a gun, get down." Those are all factorial matters that need to be determined by the jury. . . .

The State further explained:

> . . . Mr. Knox has provided information that he believes he fired the first shot. I would note that is also a matter of factorial dispute because there was an ongoing struggle which is not contested by either side. So determining maybe who pulled it, certainly Mr. Knox believes he reached for his firearm to withdraw it and intended to use it, but I believe that also is a matter for factorial determination by the jury, by the trier of fact that needs to be made prior to this presupposed argument being made which this motion to quash relies upon.

7

It is clear that the trial court, in granting the motion to quash in this case, evaluated the evidence presented at the preliminary motion to find that Mr. Barnes could not "be held criminally responsible for the death of Ms. Couvillion."

Accordingly, after reviewing the record before us *de novo*, we find that the trial court erred in granting Mr. Barnes' motion to quash. Our finding is based on the trial court's failure to confine its consideration of the motion to quash to questions of law. To the contrary, the trial court clearly and impermissibly considered factual matters that go to the merits of the offense charged.

**CONCLUSION**

Based on the foregoing, the judgment of the trial court, granting Mr. Barnes' motion to quash, is reversed. We remand this matter to the trial court for further proceedings.

**REVERSED AND REMANDED**