NOT FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0679

STATE OF LOUISIANA

VERSUS

TONY JOHNSON

Judgment Rendered: APR 2 8 2021

Appealed from the
Twenty-first Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket Number 1701099

Honorable Robert Morrison, III, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Scott M. Perilloux<br>Zachary Daniels<br>Amite, LA | Counsel for Appellee,<br>State of Louisiana |
| Mary E. Roper<br>Baton Rouge, LA | Counsel for Defendant/Appellant,<br>Tony Johnson |
| Jane L. Beebe<br>Addis, LA | |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WHIPPLE, C.J.**

Defendant, Tony Johnson, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. He pled not guilty. After a trial by jury, defendant was unanimously found guilty as charged. The trial court imposed a sentence of life imprisonment. Defendant now appeals. For the following reasons, we affirm the defendant's conviction and sentence as amended and remand with instructions.

## STATEMENT OF FACTS

On August 19, 2016, Jeanette Scott, sister of victim Christopher Franklin, Jr., arrived home from work around midnight. She lived in a Ponchatoula, Louisiana apartment with her brother and her boyfriend. She saw that the window screen was on the ground, the window was open, and the door was partially ajar. She called out to her brother through the partially open door, but did not receive a response. She had never before arrived home to find the door or window in that condition. She called her step-father, who told her to go to a nearby Walmart and await his arrival. Lyntrell Hemphill, Scott's step-father, entered the house along with her boyfriend, Don Tolbert. Upon entering, they observed the apartment to be in disarray. In Franklin's bedroom, Hemphill observed Franklin's body on the bedroom floor, behind a door with a hole in it. He was unable to open the door more than a small crack, due to Franklin's body blocking it. Hemphill immediately left the house and told Scott to call 911, which she did. Scott testified that the last communication from Franklin was a Facebook post made at 9:24 p.m. on August 18th, 2016.

Ponchatoula Police Department ("PPD") Sergeant Carol Wilson responded to the 911 call. After entering the apartment and looking into Franklin's room through the doorway, she saw Franklin's body on the ground with a gunshot wound to the left side of his head. Sgt. Wilson observed "[t]he majority of his

2

skull and brain was gone." It appeared to her that he had been dead for some time. On the outside of the house, Sgt. Wilson saw the open window with the window screen detached. She secured the crime scene, assisted by PPD Sergeant Damieon Tanner. Sgt. Tanner and Detective Randy Hills recorded the names of everyone entering or leaving the crime scene. Det. Hills also collected voluntary DNA swabs from Scott and Tolbert, as both lived at the address. Detective Jeffery Miller of the PPD was initially the lead detective and assisted in collecting fingerprints from Hemphill, Scott, and Tolbert in order to eliminate them as contributors of other fingerprints found within the house. Det. Miller worked on the case for about five months before handing it off to the Louisiana Attorney General's Office, Bureau of Investigations.

State crime scene technicians took photographs and collected fingerprints, DNA samples, and other evidence from the apartment. Finger and palm prints, in addition to DNA samples, were recovered from the window. Defendant was later determined to be the person who left the finger and palm prints, in addition to DNA found on the window. Stephanie Hemphill, the victim's mother, explained that Franklin knew defendant from school, and was dating Sandrina Jones, the cousin of co-defendants Dkerian Thompson and Jeremiah Ray.

Forensic testimony revealed that the hole in Franklin's bedroom door was consistent with a single 12-gauge shotgun blast, and the position of Franklin's body, brain matter, and blood indicated the left side of Franklin's head was close to the door where the shot passed through. Based on the blood spatter, location of the hole, and position of the body, Franklin apparently was bracing himself against the door in an attempt to prevent someone from making entry into the bedroom when he was shot. There was no indication anyone had entered the room before Franklin's body was recovered by investigators.

3

Six months after Franklin's death, and after officials learned defendant left fingerprints on the window of Franklin's residence, Special Agent Matthew Vasquez with the Louisiana Department of Justice began investigating the case. He first interviewed Mario Tate, Franklin's neighbor. Tate informed Special Agent Vasquez that he observed two armed African-American men being dropped off by a pickup truck on the night of the killing. One was armed with a handgun and the other was armed with a shotgun. He saw the man carrying the shotgun open the window and enter, bringing the shotgun along with him.

Special Agent Vasquez met with defendant for a custodial interrogation. Defendant was given a form detailing his Miranda[1] rights, and defendant waived his rights and spoke to Vasquez without an attorney present. The interview was recorded and played for the jury. In this interview, defendant initially denied being at the apartment building, being involved in a shooting, or ever having used a shotgun. He also said he did not know Franklin and was not in Ponchatoula during August 2016. Later in the interview, defendant admitted his fingerprints may have been at the scene because he may have broken into the apartment at some other time and stolen things and that he at least "kn[e]w of" Franklin from school. A DNA sample was taken from defendant pursuant to a search warrant.

Later that day, after Special Agent Vasquez left, defendant indicated he wanted to speak with him again. Vasquez returned, and defendant was again read his Miranda rights, and he again waived them. During the second interview, defendant admitted to entering the apartment through the window and firing the shotgun, and he detailed the participation of his accomplices. Defendant alleged he did not intend to shoot anyone, but that he was afraid Franklin would start shooting. He alleged that he did not know the shotgun was loaded. He expressed regret that the window was left unlocked, reasoning that the murder would not

---

[1]Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

have happened otherwise. The second interview was also recorded and played for the jury.

In a third statement taken less than an hour after the second interview concluded, defendant went through his Facebook account to identify other subjects involved in the robbery and killing. Defendant identified his co-perpetrators by their Facebook profiles, and they were subsequently arrested and charged. Co-defendant Shauna Broussard was later located and arrested, and Special Agent Vasquez testified that in her interview, she confirmed much of defendant's story. Three days after the third interview, defendant was interviewed for a fourth time after again waiving his Miranda rights. In that interview, defendant identified his co-perpetrators from photographs presented to him by law enforcement. The interview was recorded and played for the jury.

The investigation also revealed that from about 9:58 p.m. to 10:32 p.m. on August 18, 2016, defendant's cell phone was located in the area near the apartment in which Franklin's body was found. Furthermore, two jail calls linked to defendant were played for the jury. In the calls, defendant acknowledged to an unknown female that somebody saw him and his accomplice at the apartment, and that he shot and killed the victim when the gun "just went off."

## DISCUSSION

### Assignment of Error No. One:
### Insufficient Evidence

In his first assignment of error, defendant contends the State failed to present sufficient evidence to establish he had the specific intent to commit second degree murder, but instead only proved that he committed manslaughter or negligent homicide. Defendant asserts that the evidence shows that he did not know anyone was home or that the shotgun was loaded, and that he only went to Franklin's apartment to commit a burglary. Defendant alleges he was surprised to find

5

Franklin home and "went into a fight mode and as a near juvenile himself lacked the impulse control and reason to avoid compounding his poor decisions made thus far."

The State argues it proved every element of second degree murder, either by proving a specific intent to kill or that defendant committed felony murder. The State reasons that the jury was presented with, and rejected, defendant's theory of manslaughter or negligent homicide. The State also notes that although much of the evidence was circumstantial and if presented alone would require the State to exclude every reasonable hypothesis of innocence, defendant confessed to the killing more than once, which is direct evidence of defendant's guilt.

A conviction based on insufficient evidence cannot stand, as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See LSA-C.Cr.P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 660; State v. Mussall, 523 So. 2d 1305, 1308-09 (La. 1988).

The Jackson standard of review, incorporated in LSA-C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that in order to convict, the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144. When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most

6

favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La. App. 1st Cir. 2/19/99), 730 So. 2d 485, 487, writs denied, 99-0802 (La. 10/29/99), 748 So. 2d 1157 & 2000-0895 (La. 11/17/00), 773 So. 2d 732.

An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. State v. Thomas, 2005-2210 (La. App. 1st Cir. 6/9/06), 938 So. 2d 168, 175, writ denied, 2006-2403 (La. 4/27/07), 955 So. 2d 683. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness, including an expert. State v. Leger, 2017-0461 (La. App. 1st Cir. 11/15/17), 236 So. 3d 577, 585, vacated on other grounds, 2017-2084 (La. 6/26/19), 284 So 3d 609.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. See LSA-R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. Specific intent to kill or inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. Conversely, a defendant's confession is direct

7

evidence, for it is an acknowledgment of guilt for which no inference need be drawn. State v. Landry, 2019-0486 (La. App. 1st Cir. 2/21/20), 297 So. 3d 8, 15. Whether a defendant possessed the requisite intent in a criminal case is a question for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Williams, 2019-0362 (La. App. 1st Cir. 2/26/20) (unpublished), 2020 WL 913674, at *6, writ denied, 2020-00555 (La. 10/6/20), 302 So. 3d 527.

As an initial matter, in addition to defendant's confession that he shot Franklin in the head at close range with a shotgun, his palm prints and DNA left at the scene provided substantial circumstantial evidence of his presence in the apartment. Also, the victim's neighbor observed a black man, matching defendant's general description, enter the apartment through the window carrying a shotgun. Defendant's cell phone was mapped as being in the area of the apartment around the time the shooting likely took place. Further, a co-conspirator confirmed defendant's recounting of events.

In any case, although defendant claims to have not known Franklin was home at the time he broke into the apartment, the forensic testimony indicated Franklin was attempting to seek refuge in his bedroom when defendant fired the shotgun through the door, striking Franklin in the head at close range. Defendant then fled the scene without leaving any sign of an attempt to render aid or notify the authorities. There was no evidence that Franklin was armed or posed any danger to defendant, even assuming arguendo that defendant was somehow legally in Franklin's home. Testimony at trial established that defendant intentionally fired a shotgun through the door of a bedroom defendant knew to be occupied. The State presented sufficient evidence under the provisions of LSA-R.S 14:30.1(A)(1) to prove defendant guilty beyond a reasonable doubt, and this court finds nothing in defendant's claims sufficient to warrant overturning the jury's

8

determination. See State v. Austin, 49,061 (La. App. 2d Cir. 7/16/14), 146 So. 3d 716, 725–26, writ denied, 2014-2323 (La. 9/18/15), 178 So. 3d 140 (wherein the appellate court found the defendant's "use of the sawed-off shotgun with heavy shot demonstrates the requisite intent to kill. The level of the blast and its location near the knob indicate that any person in the small bathroom could be killed by the scattering of shot from the gun.").

Alternatively, second degree murder is "the killing of a human being ... [w]hen the offender is engaged in the perpetration or attempted perpetration of ... aggravated burglary ... even though he has no intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(A)(2).[2] This provision of the second degree murder statute "contains the circumstances under which a defendant can be found guilty under the felony murder rule, which dispenses with the necessity of proving *mens rea* accompanying a homicide—the underlying felony supplies the culpable mental state." State v. Cogar, 2017-0426 (La. App. 1st Cir. 9/15/17), 2017 WL 4082432, *3 (unpublished), writ denied, 2017-1740 (La. 9/28/18), 253 So. 3d 143 (citing State v. Small, 2011-2796 (La. 10/16/12), 100 So. 3d 797, 805); see also State v. Smith, 2014-0213 (La. App. 4th Cir. 12/17/14), 156 So. 3d 1227, 1232, writ denied, 2015-0094 (La. 11/30/15), 182 So. 3d 43 (under felony murder statute, rather than proving defendant's specific intent to commit the killing, the commission of the underlying felony supplies the requisite criminal culpability for the actions that result in the victim's death). Louisiana jurisprudence interprets the felony murder rule to require that a direct act of defendant caused the death of the victim. Small, 100 So. 3d at 806.

Aggravated burglary is the unauthorized entering of any inhabited dwelling where a person is present, with the intent to commit a felony or any theft therein if

---

[2]The grand jury indictment lists LSA-R.S. 14:30.1(A)(2) as the provision under which defendant and his co-defendants were charged; however, at trial, the jury was instructed regarding both LSA-R.S. 14:30.1(A)(1) and (A)(2) prior to being released to deliberate.

9

the offender is armed with a dangerous weapon. LSA-R.S. 14:60(A)(1). Here, defendant admitted to entering Franklin's apartment with the intent to commit a theft while armed with a shotgun, although he contends he believed it to be unloaded. The State provided sufficient evidence under the provisions of LSA-R.S. 14:30.1(A)(2) to sustain the conviction.[3]

After a thorough review of the record, we find that the evidence supports the guilty verdict. Presented with defendant's explanation regarding the shooting, the jury made a credibility determination and rejected defendant's hypothesis that the fatal shooting was anything less than intentional. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of second degree murder. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam).

This assignment of error lacks merit.

### Assignment of Error No. Two:
### Excessive Sentence

In his second assignment of error, defendant argues that his life sentence is excessive. Defendant asserts that a life sentence is excessive because he is a young offender who committed the offense through "impulsive actions and poor decisions[,]" and that a life sentence shocks the conscience. Citing State v. Dorthey, 623 So. 2d 1276 (La. 1993), defendant contends the trial court should have deviated from the statutory mandatory minimum sentence of life imprisonment.

---

[3]Defendant further argues that the evidence presented was only sufficient to convict him of negligent homicide or manslaughter. Because we conclude, as discussed herein, that the evidence was sufficient to support defendant's conviction of second degree murder, we pretermit consideration of defendant's alternative arguments. See State v. Rosario-Colon, 2019-0406 (La. App. 1st Cir. 9/27/19), 289 So. 3d 126, 132 n.2, writ denied, 2019-01806 (La. 1/28/20), 291 So. 3d 1055, cert. denied, ___ U.S. ___, 140 S. Ct. 2727, 206 L. Ed. 2d 859 (2020).

The State argues the sentence is not constitutionally excessive, that it is the legislature that is tasked with making determinations of sentencing appropriateness, and that second degree murder "has been identified as one of the most egregious offenses by the Legislature." The State further claims that given the facts of the case, the trial court was presented with no evidence to support a downward departure.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Livous, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1036, 1044, writ denied, 2018-1788 (La. 4/15/19), 267 So. 3d 1130. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Scott, 2017-0209 (La. App. 1st Cir. 9/15/17), 228 So. 3d 207, 211, writ denied, 2017-1743 (La. 8/31/18), 251 So. 3d 410. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Brown, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So. 2d 566, 569.

The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record

11

clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. State v. Lanclos, 419 So. 2d 475, 478 (La. 1982); Scott, 228 So. 3d at 211. The trial court should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. State v. Jones, 398 So. 2d 1049, 1051-52 (La. 1981); State v. Spikes, 2017-0087 (La. App. 1st Cir. 9/15/17), 228 So. 3d 201, 204-05.

Mandatory sentences have been repeatedly upheld as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual, or excessive punishment. Scott, 228 So. 3d at 212. To rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, 97-1906 (La. 3/4/98), 709 So. 2d 672, 676.

Considering the nature of the crime and the mandatory life sentence at issue, we find no abuse of discretion by the trial court. To the extent defendant is suggesting his situation is unique, he has not proven by clear and convincing evidence that he is exceptional such that the sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See State v. Cawthorne, 2018-155 (La. App. 3d Cir. 10/3/18), 257 So. 3d 717, 724-728, writ denied, 2018-1899 (La. 4/8/19), 267 So. 3d 607 (wherein the court rejected the 18-year-old defendant's argument that due to his youth and lack of criminal history, he should be treated like a juvenile offender and be granted parole eligibility on his mandatory life sentence for second

12

degree murder); State v. Monceaux, 2017-1052 (La. App. 3d Cir. 5/9/18), 2018 WL 2138289, at *3-4 (wherein the court rejected the 19-year-old defendant's claim of youth and diminished intellectual capacity as grounds for deviating from the mandatory life sentence for aggravated rape); State v. Little, 50,776 (La. App. 2d Cir. 8/10/16), 200 So. 3d 400, 403-06, writ denied, 2016-1664 (La. 6/16/17), 219 So. 3d 341 (wherein the court rejected the 22-year-old, moderately mentally retarded defendant's request for a downward departure from the mandatory life sentence, noting "[t]he callous and utterly senseless murder of the victim outweighs any argument for leniency for this defendant due to his mental condition.") Accordingly, the sentence imposed by the trial court is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.

This assignment of error also lacks merit.

## PATENT ERROR

This court routinely reviews the record for error under LSA-C.Cr.P. art. 920(2), whether or not such a request is made by a defendant or defense counsel. Under LSA-C.Cr.P. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found sentencing errors.

For a conviction of second degree murder, the offender shall be imprisoned at hard labor for life without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:30.1(B). The minutes indicate defendant was sentenced to life "in prison" without benefit of parole, probation, or suspension of sentence. However, the sentencing transcript reveals the court sentenced defendant to "life

13

imprisonment, with or without hard labor, with credit for time served."[4] Thus, the trial court failed to designate whether the sentence was to be served with or without hard labor and, as such, the sentence is indeterminate.

Louisiana Code of Criminal Procedure article 920(2) authorizes consideration of such an error on appeal. Further, LSA-C.Cr.P. art. 882(A) authorizes correction by the appellate court. State v. Hamilton, 2019-1206 (La. App. 1st Cir. 2/21/20), 297 So. 3d 782, 789, writ denied, 2020-0608 (La. 11/10/20), 303 So. 3d 1046. We find that correction of this illegally lenient sentence does not involve the exercise of sentencing discretion and, as such, there is no reason why this court should not simply amend the sentence. Accordingly, since a sentence at hard labor was the only sentence that could be imposed, we correct the sentence to provide that it be served at hard labor.

The trial court also failed to designate that the sentence was to be served without benefit of parole, probation, or suspension of sentence. Although the trial court did not state the sentence was to be served without benefit of parole, probation, or suspension of sentence, that condition is deemed to be part of the defendant's sentence pursuant to LSA-R.S. 15:301.1. Nonetheless, because the sentence must be amended to designate that the sentence is to be served at hard labor, we will likewise amend the sentence to provide that it is to be served without benefit of parole, probation, or suspension of sentence.

## CONCLUSION

For the above and foregoing reasons, the defendant's conviction of second degree murder is affirmed. The trial court's sentence of life imprisonment with or without hard labor and with credit for time served is amended to provide that the defendant's sentence shall be served at hard labor and without benefit of parole, probation, or suspension of sentence, and, as amended, the sentence is affirmed.

---

[4]Where there is a conflict between the transcript and commitment, the transcript prevails. See State v. Collins, 2007-0310 (La. 10/12/07), 966 So. 2d 534, 535 (per curiam).

14

This matter is remanded to the trial court with instructions to correct the minutes and the commitment order and to transmit the amended record to the Louisiana Department of Corrections.

**CONVICTION AFFIRMED; LIFE SENTENCE AMENDED TO PROVIDE THAT THE SENTENCE BE SERVED AT HARD LABOR AND WITHOUT BENEFIT OF PAROLE, PROBATION, OR SUSPENSION OF SENTENCE AND AFFIRMED AS AMENDED; REMANDED FOR CORRECTION OF THE MINUTES AND COMMITMENT ORDER, AND FOR TRANSMISSION OF THE AMENDED RECORD TO THE DEPARTMENT OF CORRECTIONS.**